CUDAHY PACKING CO. v. GRAND TRUNK WESTERN RY. CO.

(Circuit Court of Appeals, Seventh Circuit. April 14, 1914. Rehearing
Denied May 12, 1914.)

No. 1997.

1. CARRIERS (§ 27*)—INTERSTATE COMMERCE—FREIGHT CHARGES—REGULATION
—"TRANSPORTATION."

The Interstate Commerce Act (Feb. 4, 1887, c. 104, 24 Stat. 379 (U. S.
Comp. St. 1901, p. 3154) having defined transportation to include all serv-
ices in connection with refrigeration or icing of property transported, an
interstate carrier, by holding itself out voluntarily to ice car load ship-
ments, brought itself within the supervisory and regulatory provisions
of the act with respect to the reasonableness, certainty, and publicity of
rates charged for icing services, and hence was not entitled to recover the
value of such services on an express or implied contract, independent of
rates made, published, and filed.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 73, 74, 94; Dec.
Dig. § 27.*

Duties and liabilities of carriers as to furnishing facilities for trans-
portation, see note to Harp v. Choctaw, O. & G. R. Co., 61 C. C. A. 414.

For other definitions, see Words and Phrases, vol. 8, pp. 7075, 7076.]

2. CARRIERS (§ 30*)—RATES—ICING CHARGES.

An interstate carrier published and filed with the Interstate Commerce
Commission a tariff sheet, covering icing charges, providing that the car-
rier, when requested, would furnish refrigeration, charging therefor the
"actual cost including labor, but not less than $2.50 per ton of 2000 lbs."
Held, though the provision for charging the actual cost was void for un-
certainty, such invalidity did not invalidate the balance of the rate, and
hence the carrier was entitled to charge $2.50 per short ton.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 81; Dec. Dig.
§ 30.*]

In Error to the District Court of the United States for the Eastern
Division of the Northern District of Illinois; George A. Carpenter,
Judge.

Action by the Grand Trunk Western Railway Company against the
Cudahy Packing Company. Judgment for plaintiff, and defendant
brings error. Affirmed.

Charles B. Morrison, of Chicago, Ill., for plaintiff in error.

Geo. W. Kretzinger, of Chicago, Ill., for defendant in error.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

BAKER, Circuit Judge. Defendant in error, plaintiff below, recov-
ered judgment against defendant for $3,637.75 on account of icing
charges in transporting dressed meats for defendant.

A jury trial was duly waived, and the cause was submitted on an
agreed statement of facts that showed: That plaintiff was a railroad
corporation engaged in interstate commerce. That defendant was an
interstate shipper of dressed meats. That plaintiff had duly published
and filed its schedule of carriage charges for dressed meats, exclusive
of icing charges. That defendant paid plaintiff the carriage charges.
That plaintiff had duly published and filed a tariff sheet in which the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

following provision was made for icing charges over and above carriage charges: "Shippers desiring refrigerator service for freight in car loads must furnish at their own cost the necessary quantity of ice and salt, or this company, when requested, will obtain and furnish the same, charging therefor the actual cost including labor, but not less than $2.50 per ton of 2000 lbs., fractions of tons to be charged for pro rata." That defendant requested plaintiff to ice defendant's car load shipments. That plaintiff did so and charged therefor at the rate of $2.50 per ton of 2,000 pounds. That plaintiff procured some of the ice from Swift & Co., a competitor of defendant in the dressed meats trade, at a cost of $2.50 per ton of 2,000 pounds, and that defendant failed and refused to pay plaintiff for any of these icing charges.

[1] In view of the Commerce Act's definition that transportation shall include all services in connection with refrigeration or icing of property transported, and of plaintiff's action under that definition in furnishing ice as a service in transportation, it is needless to consider plaintiff's contention that Congress lacked constitutional power to compel carriers to furnish ice, and that plaintiff could therefore recover the value of its icing services for defendant on an express or an implied contract, without making, publishing, and filing fixed and definite rates therefor. By holding itself out voluntarily as ready to ice car load shipments, plaintiff brought itself within the supervisory and regulatory provisions of the act with respect to reasonableness, certainty, and publicity of rates.

Under the Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]) compensation for service in transportation cannot be a matter of bargaining between carrier and shipper, and no payment can lawfully be demanded or received except in accordance with a fixed and definite schedule of charges duly published and filed.

[2] Is plaintiff's tariff provision, that the charge for icing shall be "the actual cost, but not less than $2.50 per short ton," void for uncertainty? If "cost" were published as the charge for a service in transportation, the tariff would in that respect undoubtedly be void, for cost is necessarily variant and is undeterminable with exactness until after the event, while the act contemplates that the shipper shall be informed of a fixed and definite rate in advance of his shipment. If the icing charge were stated to be "$2.50 per short ton," we conceive that no complaint would be made on the ground of uncertainty. If plaintiff had published that "the minimum rate for icing is $2.50 per short ton," without stating any higher rate or giving any fixed and definite basis on which a higher rate could be calculated in advance with certainty, it seems to us that the word "minimum" might well be disregarded as superfluous and $2.50 taken as the fixed rate under all circumstances. Knudsen-Ferguson Co. v. Mich. Cent. R. Co., 148 Fed. 968, 79 C. C. A. 46. Quite evidently plaintiff has woven the idea of cost into its icing tariff. But does that element inhere throughout the structure? If the cost is less than $2.50 per short ton, the tariff explicitly provides that nevertheless $2.50 per short ton shall be the rate. In that part of the structure, therefore, the idea of cost as a condition to be taken into account has clearly been excluded. It is only in the

part of the tariff which contemplates a charge above $2.50 per short ton that cost is made an element in the accounting. There is, consequently, we believe, a clean line of demarcation at $2.50 per short ton. Cost, if below or at that line, plays no part; if above, it is the sole basis given. And inasmuch as cost, for reasons heretofore stated, cannot be accepted as a published rate under the act, part of plaintiff's icing tariff is void for uncertainty. But, while the Commerce Act and all tariffs and doings of carriers should be strictly construed and enforced to accomplish the large purposes of fairness and uniformity, we are of opinion that the general principle in relation to statutes, wills, contracts, etc., that the illegal parts will be excised and the legal preserved unless the bad is so interwoven with the good that extrication is impossible, should be applied to the facts of this case. Plaintiff had duly declared that icing service was not included in the carriage rate, and had published an icing tariff, part of which was good and part bad. Where to cut seems clear, and what is left is without taint. And what is left is the only part that has been acted on by plaintiff.

Whether the carriage and icing charges separately or combined were reasonable, whether plaintiff could lawfully arrange to procure ice from defendant's competitor, and whether that arrangement brought about an undue preference, are matters beyond this case.

The judgment is affirmed.