OMAHA ELEVATOR CO. v. UNION PAC. R. CO.

UNION PAC. R. CO. v. OMAHA ELEVATOR CO.

(Circuit Court of Appeals, Eighth Circuit. March 4, 1918.)

Nos. 4740, 4741.

1. COMMERCE &8— ORDERS OF INTERSTATE COMMERCE COMMISSION.

A provision in an order made by the Interstate Commerce Commission June 29, 1908, relating to payments by a railroad company to an elevator company for services in elevating grain, which forbade payment for elevation of grain not reshipped within 10 days, etc., *held* part of the Commission's administrative order, and cannot, in view of the decisions of the courts, be treated as a part of a previous definition of elevation made in an attempt by the Commission to prevent rebating under a contract between the parties; hence the 10-day limitation expired on the expiration of the order affecting payments.

---

&For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. COMMERCE ⬦⟿88—REGULATIONS—INTERSTATE COMMERCE—COMMISSION.
     Under Interstate Commerce Act Feb. 4, 1887, c. 104, § 15, 24 Stat. 384. as
   amended by Hepburn Act June 29, 1906, c. 3591, § 4, 34 Stat. 584
   (Comp. St. 1916, § 8583), a limitation in an administrative order of the
   Interstate Commerce Commission concerning a railroad company's pay-
   ments under a contract with an elevator company for the elevation of
   grain, becomes effective when the order becomes effective, and expires on
   expiration of the order by lapse of time.

3. COMMERCE ⬦⟿37—INTERSTATE COMMERCE COMMISSION—SCOPE OF REGULA-
   TION.
     Elevator facilities furnished a railroad company in connection with
   the transportation of grain are, in view of the Hepburn amendment,
   within the provisions of the act to regulate commerce, and, unless al-
   lowances therefor by the railroad company were covered by published
   and filed rate schedules, such amounts could not be legally collected by
   the elevator company; hence, after the cancellation of tariff schedules
   providing for the allowances, the elevator company cannot recover for
   such services thereafter rendered.

4. JUDGMENT ⬦⟿683—CONCLUSIVENESS—PERSONS CONCLUDED.
     A judgment allowing an elevator company to recover against a rail-
   road company for the elevation of grain under a contract providing for
   payment is not conclusive as to the right of an assignee of the contract
   to recover for such services, the facilities being within the act to regu-
   late commerce, where at the time of its rendition it appeared there was
   a tariff, duly filed, prescribing a rate for such services, but which was
   thereafter canceled, for cancellation was a matter of which all parties
   must take notice, and the elevator company could not thereafter recover
   for such services, though it continued to render them.

In Error to the District Court of the United States for the Dis-
trict of Nebraska; Thomas C. Munger, Judge.

Action by the Omaha Elevator Company against the Union Pacific
Railroad Company. There was a judgment for plaintiff for part only
of the amount claimed, and plaintiff brings error, while defendant
also brings error. Affirmed.

Edward P. Smith, of Omaha, Neb., for plaintiff.

Edson Rich and N. H. Loomis, both of Omaha, Neb. (C. B. Mat-
thai, of Omaha, Neb., on the brief), for defendant.

Before SANBORN and CARLAND, Circuit Judges, and BOOTH,
District Judge.

BOOTH, District Judge. This is an action at law by Omaha Ele-
vator Company against Union Pacific Railroad Company upon a con-
tract to recover for services rendered in transferring through the
elevator of the plaintiff at Council Bluffs, Iowa, grain brought in over
the line of defendant railway company. The contract was originally
entered into February 7, 1899, between Frank H. Peavey and defend-
ant railway company, and was assigned by Peavey to the elevator
company. The history of the contract and of the litigation concern-
ing it may be found in 10 Interst. Com. Com'n R. 309; 12 Interst.
Com. Com'n R. 85; 14 Interst. Com. Com'n R. 315; (C. C.) 176 Fed.
409; 222 U. S. 42, 32 Sup. Ct. 22, 56 L. Ed. 83. The fifth para-
graph of article I of the contract, upon which this action is based,
reads as follows:

"Fifth. Railroad company will deliver to said elevator all grain originating on its lines and transported thereover which may be consigned to or in care of said elevator, and will pay to Frank H. Peavey or his assigns, on all such grain transferred through said elevator a transfer charge not exceeding one and one-quarter cents per hundred pounds during the first ten years of this contract, and not exceeding one cent per hundred pounds thereafter, but at no time shall the transfer charge herein provided to be paid exceed such transfer charge as is customarily made upon similar business at similar points. Such payments to be made on the 20th day of the month succeeding month in which the transfer service is performed."

The rate of charge fixed by this paragraph was changed in November, 1907, to three-quarters of a cent per 100 pounds. Recovery is sought for the transfer of upwards of 40,000,000 pounds between September 1, 1911, and November 25, 1914, amounting to $3,005.29. There is no dispute as to the actual handling by plaintiff of the amount of grain as stated. Two defenses were interposed:

First. (a) The order made by the Interstate Commerce Commission on the 29th of June, 1908, but not taking effect until May 1, 1910, reading as follows:

"It is ordered that the Union Pacific Railroad Company be, and it is hereby. notified and required forthwith to cease and desist for a period of two years from paying any allowance to Peavey & Co. on their own grain received into any of their elevators at Kansas City and Council Bluffs (or on grain so received in any of said elevators in which they have any direct ownership or interest) that is not reshipped out of said elevators within ten (10) days after it has been received therein, and to cease and desist from paying any allowance to Peavey & Co. on grain belonging to them or in which they have any direct or indirect ownership or interest, that has been mixed, treated, weighed, or inspected in any of their said elevators at Kansas City and Council Bluffs."

(b) In connection with said order the decree entered by this court in the case of Peavey & Company et al. v. Union Pacific Railway Company, reported in 176 Fed. 409, as modified by the decision of the Supreme Court of the United States in 222 U. S. 42, 32 Sup. Ct. 22, 56 L. Ed. 83.

(c) The allegation that all of the grain elevated by plaintiff, as set forth in its petition, was owned by plaintiff, and that no part of said grain moved through and out of said elevator within ten days after the elevation services.

The second defense was that defendant had no tariff on file after May 20, 1912, covering either the allowances provided for in the contract, or any substituted allowances.

The court below found the above-mentioned allegations of fact in the defenses to be true; and in its findings separated the time during which the services in question were rendered by plaintiff into three periods: First, from September 1, 1911, to May 1, 1912; second from May 1, 1912, to May 19, inclusive, 1912; third from May 20, 1912, to November 25, 1914. The court held that there could be no recovery for services rendered during the first period, although defendant then had a tariff published and on file with the Interstate Commerce Commission covering the charges, because of noncompliance with the 10-day limitation which was in force up to May 1,

1912. The court further held that there could be a recovery for the services rendered during the second period, namely, between May 1 and May 19, inclusive, 1912, inasmuch as during that period there was a tariff published and on file by the defendant company covering the charges claimed, and the 10-day limitation was not in force, having expired by the terms of the order. The court further held that there could be no recovery for the services rendered during the third period, viz., May 20, 1912, to November 25, 1914, because during that period there was no tariff published and on file by the railway company covering the charges in question. Judgment was accordingly entered covering the charges for the services during the second period, from May 1, to May 19, inclusive, 1912, amounting to the sum of $43.65.

Writs of error have been prosecuted by both parties—by the elevator company, claiming error because judgment was not rendered in its favor for the services performed during the first and third periods, as well as the second; by the railway company, claiming error because judgment was not rendered in its favor that plaintiff recover nothing.

Two matters require consideration: First, the 10-day limitation mentioned in the order of the Interstate Commerce Commission of June 29, 1908; second, the effect of the lack of a published and filed tariff after May 20, 1912, covering the charges sued for.

[1] As to the 10-day limitation, the plaintiff contends that this provision, being a part of the order of June 29, 1908, went into effect at the time the order became effective, and ceased to have vitality when the order expired by its own limitation. The defendant contends that this 10-day limitation is part of a definition given by the Interstate Commerce Commission of the word "elevation," as used in the Hepburn amendment to the Interstate Commerce Act, and being simply a construction of the act, or of the word "elevation" in the act, it was unnecessary that the 10-day limitation should be included in the order, and its inclusion was mere surplusage; but being part of the definition of the word "elevation," the vitality of this 10-day limitation continued even after the order itself expired.

This contention of defendant cannot be sustained. While it is true that the Interstate Commerce Commission, in its efforts to prevent rebates and discriminations under the operation of the Peavey contract, did in its opinion of April, 1907, frame a tentative definition of "elevation," which included as one of its elements the 10-day limitation, yet, as pointed out by Commissioner Lane in his dissenting opinion at that time, the definition had but doubtful application to the actual facts of the case. He said:

"Neither the provisions of the tariff nor of the contract conform to this definition."

The 10-day limitation was not contained in the order made by the Commission in reference to this contract in April, 1907. If, as counsel suggests, the omission from that order of the 10-day limitation was intentional, inasmuch as it was already included in the defi-

nition adopted by the Commission, then it might be urged with equal force that the specific inclusion of the 10-day limitation in the order of June 29, 1908, was with deliberate intent, either because the Commission at that time held that it was not included in the definition or that the definition was not applicable to the facts. It is clear from the record that the Commission had at the time of the latter order materially changed its views as to several matters included in the practical operations under the contract.

But, whatever the views of the Commission were in June, 1908, in regard to the 10-day limitation, this court, in its consideration of the allowance controversy and in its opinion reported in 176 Fed. 409, did not include the 10-day limitation as an element in its definition of "elevation," but considered that limitation simply as one of the restrictions or conditions in the administrative order of June 29, 1908. This is evident from the amount of the judgment ordered against the defendant railway company.

Furthermore, though this court by its decree held the whole order of June 29, 1908, null and void, and the Supreme Court by its decision in 222 U. S. 42, 32 Sup. Ct. 22, 56 L. Ed. 83, modified the decree by allowing the 10-day limitation to stand, yet the language of its opinion shows conclusively that the Supreme Court also considered the 10-day limitation, not as part of a judicial definition, but as one of the conditions or restrictions of an administrative order.

Therefore, in view of the language of the contract, the language of the tariffs filed and published, both before and after June 29, 1908, the language of the order itself, the attitude of this court as shown by the opinion and decree above mentioned, and the attitude of the Supreme Court as indicated by its language, we are convinced that this 10-day limitation, contained in the order of June 29, 1908, was not mere surplusage, nor a mere reiteration of an element of a definition already judicially established, but rather an explicit statement of one of the conditions or restrictions contained in the order.

[2] This limitation became effective when the order went into force; it ceased to be effective when the order lapsed by expiration of time. Section 15, Act to Regulate Commerce, as amended by the Hepburn Act; National Hay Ass'n v. Ry. Co., 19 Interst. Com. Com'n R. 34, 37; Rates from Walsenberg's Fields, 26 Interst. Com. Com'n R. 85, 86, recognized in Southern Pac. Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498, 514, 31 Sup. Ct. 279, 55 L. Ed. 310; Southern Pacific Co. v. Commission, 219 U. S. 433, 452, 31 Sup. Ct. 288, 55 L. Ed. 283; N. Y. Cent. & H. R. R. Co. v. Interstate Commerce Commission (C. C.) 168 Fed. 131.

It follows, since the 10-day limitation was not in force during the period from May 1 to May 20, 1912, and a tariff was on file and published covering the charges, that plaintiff was entitled to recover for the services rendered during that period. It follows, further, that no recovery could be had for the charges accruing during the first period, September 1, 1911, to May 1, 1912, inasmuch as the 10-day limitation was then in force, and the record shows noncompliance therewith.

As to the third period, viz., subsequent to May 20, 1912, the record shows that, by action duly taken, the defendant's tariff in force prior to May 20, 1912, which covered these allowances, was canceled as of that date, and no new tariff substituted covering such allowances.

[3, 4] The facilities furnished by plaintiff were within the terms of the act to regulate commerce. If there ever existed any doubt as to this, such doubt was removed by the Hepburn amendment. Penn. Co. v. U. S., 236 U. S. 351, 362, 35 Sup. Ct. 370, 59 L. Ed. 616. Unless the allowances were covered by a published and filed rate schedule, they could not legally be collected. Railway Co. v. Kirby, 225 U. S. 155, 32 Sup. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501; Railroad Co. v. Mottley, 219 U. S. 467, 31 Sup. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671; Elwood Grain Co. v. Railway Co., 202 Fed. 845, 121 C. C. A. 153.

These cases are not overruled nor modified by the Arbuckle Case, 231 U. S. 274, 34 Sup. Ct. 75, 58 L. Ed. 218. The question of filing a tariff by the railway company was not directly in issue nor passed upon in that case. It was conceded that the charges there under discussion were covered by a published tariff on file. This appears both from the opinion of the Supreme Court (231 U. S. 289, 296, 34 Sup. Ct. 79, 82 [58 L. Ed. 218]), and also from the opinion of the Interstate Commerce Commission (Federal Sugar Refining Co. v. B. & O. R. R. Co., 20 Interst. Com. Com'n R. 200). Furthermore, the Kirby Case has been followed and approved in numerous decisions by the Supreme Court subsequent to the Arbuckle Case. Railway Co. v. Maxwell, 237 U. S. 95, 97, 35 Sup. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665; Railway Co. v. Prescott, 240 U. S. 632, 638, 36 Sup. Ct. 469, 60 L. Ed. 836; Railway Co. v. Blish Co., 241 U. S. 190, 197, 36 Sup. Ct. 541, 60 L. Ed. 948.

The contention of counsel for plaintiff, that the right of recovery is res adjudicata by reason of the decree in Peavey & Co. v. Union Pac. Ry. Co. (C. C.) 176 Fed. 409, cannot prevail. The allowances here sought to be recovered are for services in connection with transportation in interstate commerce, and, as above stated, they are within the purview of the act to regulate commerce. The allowances, though provided for in the first instance by contract between the parties, cannot be recovered, if at the time the services were rendered the provisions of the act to regulate commerce touching such allowances were not complied with. Both parties were bound to know what that act required, and whether compliance was being made. In the case of Peavey & Co. v. Union Pac. Ry. Co., supra, there was no suggestion made that the provisions of the act to regulate commerce requiring publication and filing of tariffs covering the charges in question had not been complied with, nor could such claim have been made in view of the facts. In the case at bar the situation is entirely different. The cancellation effective May 20, 1912, of the tariff containing these allowances, was a matter of record of which plaintiff was bound to take notice. What its remedies were it is not necessary here to determine. It is clear that it could not go on rendering the services, and recover therefor the allowances

which, though provided for in the contract, yet, by reason of existing circumstances, had come under the ban of the act to regulate commerce. New Haven R. R. Co. v. Interstate Commerce Commission, 200 U. S. 361, 398, 26 Sup. Ct. 272, 50 L. Ed. 515; Louisville & Nashville Ry. Co. v. Mottley, 219 U. S. 467, 31 Sup. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671; Philadelphia, Baltimore & Washington R. R. Co. v. Schubert, 224 U. S. 603, 32 Sup. Ct. 589, 56 L. Ed. 911; Elwood Grain Co. v. St. Joseph & G. R. Ry. Co., 202 Fed. 845, 121 C. C. A. 153; Cudahy Packing Co. v. Ry. Co., 215 Fed. 93, 131 C. C. A. 401.

It therefore follows that there could be no recovery for charges accruing during the third period.

The findings and conclusions of the lower court were correct, and the judgment is affirmed.