GUNNISON SUGAR CO. et al. v. PUBLIC UTILITIES
COMMISSION OF UTAH et al.

No. 4437. Decided March 25, 1927. Rehearing Denied May 6, 1927.
(256 P. 790.)

*Dey, Hoppaugh & Mark,* of Salt Lake City, for plaintiffs.

*Van Cott, Riter & Farnsworth,* of Salt Lake City, for defendant.

CHERRY, J.

This proceeding was commenced before the Public Utilities Commission, under Comp. Laws 1917, § 4838, by the plaintiffs, to recover reparation from the Denver & Rio Grande Western Railroad Company, upon the allegation that the railroad company had charged the plaintiffs for transporting certain shipments of sugar an unlawful and excessive amount, and an amount $16,782.76 in excess of the schedules, rates, and tariffs therefor, as published and on file with the commission. After a hearing, the commission denied the relief sought and dismissed the complaint.

The plaintiffs have brought the case here by writ of review, and contend that the commission acted without and in excess of its authority in denying reparation and dismissing the complaint.

The controversy relates to the interpretation and effect to be given the freight tariff on sugar contained on a certain sheet of the published rates of the railroad company, and in particular as to whether the rates are quoted in cents per ton of 2,000 pounds, as contended by the plaintiffs, or in cents per 100 pounds, as contended by the railroad company.

When the shipments were made, the rates were interpreted as being "in cents per 100 pounds," and the freight was computed and paid upon that basis.

The rate sheet in question is page 243 of the table of commodity rates. On this sheet the table of rates for stone concludes and the table of rates for sugar begins. The sheets in the table are ruled in five vertical columns, with headings printed at the top. In the first four columns is printed, respectively, the item number, description of commodity, place from which and to which rates are quoted, and opposite and in the last column is printed in figures the freight rate between the specified points upon the commodity described. So far as material here, the particular rate sheet in question is as follows:

Table of Commodity Rates—Continued.

Stone—Concluded.

| Item No. | Commodity | From | To | Rate in Cents per Ton of 2,000 Lbs. |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

Sugar

|  |  |  |  |  |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

The table of rates for sugar continues over and occupies all of sheet 244 and a portion of sheet 245. At the top of the rate column on both these sheets is printed the heading, "Rates in Cents per 100 Pounds (Except as Noted)."

The claim of the plaintiffs for reparation is predicated solely upon the contention that the freight rate for sugar as contained in sheet 243 of the table, as above described, must be construed as a rate "per ton of 2,0000 pounds," and that, as they were required to and did pay the rate computed as "per 100 pounds," they were thus compelled to pay an unlawful and excessive rate.

The commission took evidence and found as a fact "that it is the general custom of railroad transportation companies in the state of Utah and throughout the other Western states as well, to quote rates for sugar in their tariff sheets in cents per 100 pounds and shipments, generally speaking, have been made accordingly at such rates."

The conclusion of the commission was that the rates in controversy were intended to and did mean "rates in cents per 100 pounds." A further reason given by the commission

for its denial of plaintiffs' claim was that to grant the reparation applied for would result in gross discrimination between shippers and localities.

We entertain no doubt as to the correctness of the conclusion arrived at by the commission. The end and purpose of the statute concerning rates of public utilities is to prevent unjust and unreasonable rates, to secure uniform and equal rates for all persons, and to prohibit favoritism and discrimination. When a rate is once ascertained or fixed, it must be adhered to. The purpose of the law is defeated if departures from the established rates are permitted. This principle is firmly settled by many cases. But in this case we do not reach that question. The inquiry here is not one of departure or variation, but the question of what is the lawful established rate.

Looking alone at sheet 243 of the published tariff, there is some plausibility for the claim that the rates for sugar are quoted "in cents per ton of 2,000 pounds." The printed heading in the rate column at the top of the sheet in the stone schedule indicates that it refers to and controls the entire column of the sheet. But, when it is considered that the continuing and larger portion of the sugar schedule on the following sheets quotes rates otherwise proportionate "in cents per 100 pounds"; that no reason appears for such radical difference; that the recognition of such difference would result in consequences so mischievous and absurd as to plainly defeat the spirit and purpose of the law—it becomes imperative to look beyond the one sheet in controversy and to consider the context and other relevant parts of the whole document and the nature of the subject-matter and other competent facts, in order to arrive at a correct interpretation of the rate. See *Jeremy Fuel & Grain Co.* v. *Public Utilities Comm.*, 63 Utah, 392, 226 P. 456.

In the change from the schedule of stone, wherein the rates are quoted in cents per ton, to the schedule of sugar, wherein the rates quoted are appropriate and reasonable in amount if quoted in cents per 100 pounds, but absurdly unreasonable

if quoted in cents per ton, it is plainly apparent that the appropriate change in the column heading was intended but omitted. From the facts and circumstances proper to be considered in the matter, the intent and purpose to quote the rates for sugar as in cents per 100 pounds is so clearly and conclusively shown as to leave no room for controversy.

The authority of law for supplying manifest omissions in statutes, in order to avoid absurd and miscievous consequences and to give effect to the legislative intent, is found in many cases. See annotations on the subject, 3 A. L. R. 404, where the general rule is thus stated:

"Where words have been omitted from a statute or an ordinance by inadvertence or through a clerical error, and the intent of the legislature is ascertainable from the context, the court will insert the words necessary to carry out that intent. Courts will not permit an act to be declared invalid for uncertainty, where reason demands the insertion of words therein."

This principle is equally applicable to the matter in controversy here.

The interpretation of the rate contended for by plaintiffs, by resulting in gross inequality between shippers, would frustrate and defeat the purpose of the law, and produce in an aggravated form the very evils and mischiefs which the law is intended to prevent. The construction placed upon the rate by the commission avoids these consequences and results in consistency and equality. It gives effect to the general purpose and intent of the law, and manifestly interprets the freight rate as it was intended in fact, to mean. Of this there can be no doubt.

An additional reason for denying the plaintiffs' claim is found in Comp. Laws Utah 1917, § 4838, which authorizes the commission to order reparations in certain cases "provided, no discrimination will result from such reparation." Under the facts as proved and

found in this case, this provision would defeat the plaintiffs' claim. *Jeremy F. & G. Co.* v. *Pub. Util. Comm.*, supra.

The orders of the commission are affirmed; costs to defendants.

THURMAN, C. J., and GIDEON, and STRAUP, JJ., concur.

FRICK, J., died before decision was announced.