# CROOKSTON MILLING COMPANY v. GREAT NORTHERN RAILWAY COMPANY.[1]

April 1, 1932.

No. 28,605.

*Boutelle, Bowen & Flanagan,* for appellant.

*Cobb, Hoke, Benson, Krause & Faegre* and *J. P. Plunkett,* for respondent.

HILTON, J.

Plaintiff appeals from an order denying its motion for a new trial.

Appellant and respondent are Minnesota corporations; the latter is an intrastate and interstate common carrier for hire of freight and passengers by steam railroad, subject to the federal and state laws regulating such carriers. In its complaint appellant sought to recover from respondent alleged overcharges on certain Minnesota intrastate freight shipments from Minneapolis to Crookston. The

[1]Reported in 242 N. W. 287.

case was tried to the court without a jury and judgment ordered for respondent.

Between September 11, 1925, and November 2, 1926, both dates inclusive, there was shipped to appellant over respondent's railroad, between the two points named, merchandise represented by 90 different waybills. The amount of freight charges collected thereon was $1,943.07. Appellant claims that such charges paid by it were $465.07 more than the lawful freight rate thereon and demanded judgment therefor. Respondent insists that the charges made and collected were the proper ones. The only question involved is what were the lawful rates in effect on the shipments in question.

Under the law respondent was required to publish a tariff of rates to which it was entitled and to file the same with the railroad and warehouse commission. Appellant concedes that respondent was lawfully entitled to file a tariff for the rate which it collected, but asserts that it failed to do so; that it permitted to remain in effect a lower tariff of rates. The basis of the claim of overcharges is that such lower rates were the lawful charges which should have been collected from appellant. Respondent's position is that the charges it collected were properly established in the later higher tariff. (Plaintiff's exhibit J, filed September 11, 1925.)

Prior to that date freight rates between points in Minnesota were prescribed under what was known as the "Cashman distance tariff law." G. S. 1923 (1 Mason, 1927) §§ 4838–4847. It prohibited a carrier from charging any greater compensation for transportation of freight for a shorter than for a longer distance over the same line, the shorter being included within the longer distance. These rates were published by respondent in a tariff which contained a table of distances between points in Minnesota, together with a scale of rates prescribed by the railroad and warehouse commission. The short line distance between Minneapolis and Crookston was 280 miles, and for classes of freight 1, 2, 3, 4, 5, and A the rates ranged respectively from 88 cents to 39.5 cents per 100 pounds. (Plaintiff's exhibit I, filed June 2, 1924.) Hereafter reference will be made only to the rates on class 1, although many of the ship-

ments involved were in classes bearing a lower rate—the relation between the different classes remained constant.

In 1924 and 1925, on respondent's railway, under tariff filed with the interstate commerce commission and the Minnesota railroad and warehouse commission, there was in effect between Stillwater and Crookston (both in Minnesota) a schedule of class rates, class 1 being 93 cents (Plaintiff's exhibit H, filed February 19, 1924) which schedule applied in connection with either the Chicago, St. Paul, Minneapolis & Omaha or the Chicago, Milwaukee & St. Paul railroads, from Stillwater via Minnesota Transfer through Minneapolis to Crookston (hereafter referred to as the intermediate rule). This tariff carried the following provision:

"INTERMEDIATE APPLICATION ON MINNESOTA INTRASTATE TRAFFIC. Rates named herein applying on Minnesota intrastate traffic will apply as a maximum at directly intermediate points."

This was a general rule in force throughout the state whenever the situation warranted.

This tariff necessarily made the rate from intermediate points between Stillwater and Crookston, including Minneapolis, subject to a maximum rate of 93 cents on class 1 freight. The 93-cent maximum rate however was not, prior to September 11, 1925, actually charged on traffic from Minneapolis to Crookston due to the fact that the Cashman distance rate of 88 cents applied, inasmuch as the rates between Minneapolis and Crookston were less than the rates between Stillwater and Crookston.

On June 2, 1925, the interstate commerce commission entered an order in the case of Commercial Club of Fargo, North Dakota, v. Ahnapee & Western Ry. Co. 98 I. C. C. 691, Docket No. 13,839, requiring the rail carriers, including respondent, to publish and maintain, effective September 11, 1925, a scale of rates, known as the Fargo scale, applicable from Fargo and from certain Minnesota points, including Minneapolis, to destinations within a radius of 150 miles of Fargo. Crookston is within the 150-mile limit. For the purpose of complying with this order respondent published and filed on September 11, 1925, supplement 24 (Plaintiff's exhibit J) to Plaintiff's exhibit I, which bore on its face a legend reading:

"Changes published in the supplement are issued in compliance with order of Interstate Commerce Commission in Docket No. 13,839 of June 2, 1925."

This made the class 1 rate *from* Minneapolis *to* Crookston 116 cents. At the time this tariff supplement was published and filed no change in express terms was made in the intermediate rule contained in tariff exhibit H. Effective December 17, 1927, on a reissue of that tariff, a note was added to the intermediate rule reading as follows:

"NOTE—The rates named in this tariff shall not by their intermediate application change or supersede the rates prescribed in the orders of the Interstate Commerce Commission in Dockets No. 13,839 of June 2, 1925 [Fargo case] and 14,743 of July 14, 1925, as amended August 3, 1925, which are published·in Section 2 of N. P. Tariff No. 2323-H, ICC No. 8419, MRC No. 973."

In both exhibits I and J Crookston bore two index numbers, 175 and 310. In the supplement (exhibit J) section 1 of exhibit I was amended by adding a provision by which class rates named in that section would not apply on traffic *from* Minneapolis *to* Crookston, under index No. 175. This left the rates specified in exhibit I applicable to traffic from Crookston to Minneapolis. Also in said exhibit J a statement was expressly made which fixed the class 1 rate *from* Minneapolis *to* Crookston, under index 175, at 116 cents. Index No. 310, by reference to the rate shown under index 175, also established the 116-cent rate *from* Minneapolis *to* Crookston. Under both index numbers the rate *from* Minneapolis *to* Crookston was fixed at 116 cents; the rate from Crookston to Minneapolis remained the same as before.

A traffic expert witness for appellant correctly testified that exhibit J canceled the 88-cent rate prescribed in exhibit I in so far as the rate *from* Minneapolis *to* Crookston was concerned under index 175. Anyone seeking information as to the rate between Minneapolis and Crookston would naturally look at the then latest published rate schedules on file (exhibit J). In it there is but one rate on class 1 freight *from* Minneapolis *to* Crookston given (116

cents). This same rate would be found under either index. To find the rate from Crookston to Minneapolis, which is not expressly shown in exhibit J, search would be made in the regular tariff, exhibit I, and, for a maximum, in exhibit H (under the intermediate rule).

The 116-cent rate was collected between September 11, 1925, and November 2, 1926, on the freight here involved. The Fargo rate matter was before this court in State ex rel. R. R. & W. H. Comm. v. N. P. Ry. Co. 168 Minn. 393, 210 N. W. 399 (September 24, 1926) and its validity was recognized.

When numerous claims for refunds were made against respondent the note above quoted was added. Appellant concedes that respondent then became entitled to the 116-cent rate, but claims that it did not apply until then and that it is entitled to the refunds sued for.

G. S. 1923 (1 Mason, 1927) § 4835, provides as follows:

"No such carrier shall charge, demand, collect or receive for any service a greater or less sum than that fixed in its published schedules."

Section 6 of the interstate commerce act (49 USCA § 6) has a provision to a like effect.

It is conceded that the applicable tariff rate published and on file is the only lawful rate that may be charged. This is generally true, even if through mistake it is less than the authorized rate; it controls until changed. The sole question involved in the present case is whether under the facts stated the 116-cent rate as published in exhibit J was the applicable rate notwithstanding that there was no cancelation in express terms of the maximum rate of 93 cents by virtue of the intermediate rule.

Appellant cites to the general proposition, that where there are two rates equally applicable the lower will maintain and that a shipper is justified in demanding the lower and the carrier cannot lawfully collect more, the following cases: Caddo C. O. & R. Corp. v. Director General, 92 I. C. C. 627, 631 (in which the charge was

named "in identical language in two items diametrically opposed to each other in their application"—there was an ambiguity in the same tariff); United Verde Copper Co. v. Pennsylvania Co. 48 I. C. C. 663 (in which there were two classifications in the same tariff equally applicable to the commodity in question); Boise Commercial Club v. Adams Exp. Co. 17 I. C. C. 115 (in which the carrier had published in the same tariff two rates on the same commodity between the same points, one applicable on prepaid, the other on collect shipments, and in which the commission held that the carrier could not lawfully make a difference in rates based upon the time of payment of charges); Weifenbach M. & T. Co. v. N. P. Ry. Co. 140 I. C. C. 493 (in which two rules in the same tariff equally applicable were considered, one of which resulted in lower charges than the other).

The inapplicability of those decisions to the facts in this case is apparent. Here we are considering two rates, each in a separate tariff and which are not equally applicable.

The facts in C. I. & L. Ry. Co. v. International Mill. Co. (D. C.) 33 F. (2d) 636, which refers to the necessity of cancelation of earlier rates, clearly distinguish it from the case here. Previous rates can be in fact abrogated without the use of the word "cancel."

The use of that word is not sine qua non. The previous rate *from* Minneapolis *to* Crookston was as fully canceled and superseded as it would have been had there been a specific statement to that effect. There was no ambiguous language used.

In determining which was the lawful rate here we may, though not necessarily, use general rules laid down by courts for the construction of other instruments. G. N. Ry. Co. v. Merchants Elev. Co. 259 U. S. 285, 42 S. Ct. 477, 66 L. ed. 943. Where one construction will make an instrument legal and another will make it contrary to law or public policy, the former construction should be adopted, if reasonable. 13 C. J. 539, and cases cited; Hobbs v. McLean, 117 U. S. 567, 6 S. Ct. 870, 29 L. ed. 940; Cudahy Packing Co. v. Grand Trunk Western Ry. Co. (C. C. A.) 215 F. 93; G. N. Ry. Co. v. Delmar Co. (May, 1931) 283 U. S. 686, 51 S. Ct. 579, 75

L. ed. 1349. Another rule is that where an instrument admits of two constructions, one of which will destroy it and the other uphold it, the latter construction must prevail. Pittsburgh P. G. Co. v. Paine & Nixon Co. 182 Minn. 159, 234 N. W. 453. Where a contract is made in performance of a statutory obligation and is susceptible of two interpretations, that construction will govern which is in accord with and in furtherance of the statutory obligation in question. Cochran v. County of Vermilion, 113 Ill. App. 140. A published tariff, so long as it is in force, has the effect of a statute and is binding alike on carrier and shipper. Pennsylvania R. Co. v. International C. M. Co. 230 U. S. 184, 33 S. Ct. 893, 57 L. ed. 1446, Ann. Cas. 1915A, 315. An instrument must be considered in all its parts and given effect if possible. This rule applies where the conflict results from conflicting provisions in two separate instruments as well as in a single instrument. 13 C. J. 525, et seq. And it is held, in effect, that where it is doubtful from the tariffs filed and their interrelationship one to another what the rates really are, the court is warranted in considering how the rates claimed as applicable would operate as a matter of justice in getting at the railroad's intention with relation to the tariffs. Davis v. Prairie P. L. Co. 298 F. 393; Gunnison Sugar Co. v. Public Utilities Comm. 69 Utah, 521, 256 P. 790, 791.

If appellant should prevail the foregoing rules would be disregarded. Respondent, which published exhibit J to comply with the order of the interstate commerce commission, would, if the same did not put into effect the 116-cent rate instead of the 93-cent rate, lay itself open to a penalty of $5,000 for each violation, each violation being a separate offense.

If appellant's contention is correct the entire purpose of exhibit J would be defeated. The intermediate rule in exhibit H was general, as was also exhibit I. Exhibit J, fixing the rate *from* Minneapolis *to* Crookston, was not general in its scope; it did not cover the rate from Crookston to Minneapolis; it was established for a specific purpose. Exhibit J was a supplement and expressly put in force the binding order of the interstate commerce commission.

It was a subsequent specific determination as to one-way rates in a limited territory (within a 150-mile radius of Fargo) and in all reason and under the decisions cited it established a 116-cent rate *from* Minneapolis *to* Crookston. Respondent was entitled to collect those rates.

The circumstance that because of the filing of numerous claims respondent took the action it did in filing the note referred to so that the 116-cent rate would be beyond all dispute is of no moment here any more than is the assertion that appellant paid the freight claims voluntarily and did not assert a claim until freight bills were examined by a traffic expert, who made a business of checking freight bills and filing claims on behalf of shippers, had devolved a highly technical and artificial interpretation.

We hold that the freight rates charged by respondent on the shipments here involved were proper and lawful; the rates in exhibit I and under the intermediate rule were no longer effective as to those shipments. The conclusion reached by the trial court was correct, and no errors appear.

Affirmed.