**STILLWATER SAVINGS & LOAN ASSOCIATION, Appellant,**

v.

**OKLAHOMA SAVINGS AND LOAN BOARD et al., Appellees.**

**No. 46752.**

Supreme Court of Oklahoma.

April 1, 1975.

Sam P. Daniel, Jr., Doerner, Stuart, Saunders, Daniel & Langenkamp, Tulsa, and Everett E. Berry, Berry & Murphy, Stillwater, for appellant.

R. Forney Sandlin, Muskogee, and C. D. Northcutt, Ponca City, for appellees.

BARNES, Justice:

On October 18, 1972, the Oklahoma Savings and Loan Board heard all the evidence and arguments on Ponca City Savings & Loan Association's application for a branch office in Stillwater, Oklahoma. Appellant, Stillwater Savings & Loan Association, opposed the application. The Board requested findings of fact and conclusions of law from both parties to be submitted within ten days. On October 31, 1972, all members of the Savings and Loan Board were present at a meeting to determine whether to approve said application. Attorneys for the Appellant state that they were not present and were not advised of the meeting. At this meeting the Board determined that the application should be approved.

On November 7, 1972, Appellee, Ponca City Savings & Loan Association, was granted, by the Savings and Loan Board, a Certificate of Authority to open a branch office in Stillwater, Oklahoma. On December 4, 1972, the Appellant, Stillwater Savings & Loan Association, appealed the decision of the Savings and Loan Board to the District Court of Payne County, Oklahoma. On June 27, 1973, the District Court of Payne County affirmed the decision of the Savings and Loan Board. Appellant filed an appeal with this Court.

Appellant contends that the Board was arbitrary and capricious in refusing to take judicial notice of its prior decision in a similar application for a branch office in Stillwater, Oklahoma, filed by Appellee, which was denied by order of the Board dated December 30, 1970. That contention, along with Appellant's allegation that the Board's approval of this application reflects an unauthorized change of mind, are in fact arguments that the denial of the first application is res judicata as to this application. Although there is some question concerning the application of the doctrine of res judicata to administrative orders where the administrative decision has not been judicially reviewed, 2 Am.Jur.2d, § 496, the doctrine does not apply where, as here, there are changed conditions and new facts which did not exist at the time of the prior judgment. Whittle v. Board of Zoning Appeals, 211 Md. 36, 125 A.2d 41, 71 A.L.R.2d 1353.

Appellant further contends that the Board's Order was in violation of the "Open Meeting Law," 25 O.S.1971, § 201 et seq., governing State agencies such as the Oklahoma Savings and Loan Board. The "Open Meeting Law," which was enacted in 1959, does not include hearings before the Oklahoma Savings and Loan Board when it acts in a quasi judicial manner in individual proceeding such as the present case.

In 1963 the "Administrative Procedures Act" was passed. Subsequent to the passage of the Administrative Procedures Act, the Legislature enacted the Oklahoma Savings and Loan Code of 1970, 18 O.S.1971, § 381.1 et seq. The Savings and Loan Code states that the proceedings of the Board will be conducted under the "Administrative Procedures Act."

18 O.S.1971, § 381.5, provides:

"The Oklahoma Savings and Loan Board heretofore created by law is hereby redesignated as a legally existing state board, and the prior appointment of each present member of said Board is hereby confirmed. The Board shall have the general control over associations doing business in this state, shall have power to promulgate, amend, revoke and enforce rules and regulations governing activities and conduct of the business of associations, and shall have such other powers as are conferred upon it by the provisions of this act. The Administrative Procedures Act and related laws apply to proceedings of said Board, and all rules and regulations of the Board shall be promulgated, and all individual proceedings shall be conducted, as required by said laws. Laws 1970, c. 101, § 5, eff. June 1, 1970."

18 O.S.1971, § 381.19, provides as follows:

"The Board shall act upon and issue its order granting or denying each application for a Certificate of Authority, after a hearing upon the application conducted as an individual proceeding under the Uniform Procedures Act of this state. * * *"

The "Administrative Procedures Act," 75 O.S.1971, § 301 et seq., provides for hearings before agencies under its authority, standards for decisions and appellate processes. Section 312 of the Act provides that the parties shall be notified either personally or by mail of any order. Section 301(6) of the Act provides:

"As used in this Act:

\* \* \* \* \* \*

"(6) 'order' means all or part of the final or intermediate decision (whether affirmative, negative, injunctive or declaratory in form) by an agency in any matter * * *."

The above provision of the "Administrative Procedures Act," which specified that the parties shall be notified either personally or by mail of any order, indicates there is no need for the *decision* to be reached in open session. The Administrative Procedures Act provides for open hearing under specified procedures up to the point the decision making is reached. The final decision, being a quasi judicial action, is not required to be reached in an open meeting.

In this case, Appellee would be required to show need for a branch office. "Need," as it appears in Section 381.18, is community or public need in light of the elements concerning which information is to be furnished and the accompanying requirement of financial stability, which is to be implemented procedurally as set forth in 18 O.S.1971, § 381.19:

" * * * If the Board finds that the application should be granted, it shall designate the amount of savings accounts required and fix a reasonable time within which the funds subscribed may be placed in escrow in a bank or trust company approved by the Commissioner, to be delivered to the association after incorporation or returned to the subscribers if incorporation is not completed. The Board may also require the incorpo-

rators to advance funds necessary to pay expenses of incorporation and starting of business operations, such advances to be repaid by the association after its income is sufficient to meet reserve requirements, to pay operating expenses and to pay reasonable earnings on its savings accounts. If and when all requirements of the Board are met, a Certificate of Authority shall be issued and the Commissioner shall then endorse the approval of the Board on the Articles of Incorporation. The Secretary of State shall issue a Certificate of Incorporation to the new association upon receipt of the approved articles and the incorporation fee."

Appellant's last two contentions will be considered together. Appellant contends that the only evidence of "public need" was the result of a survey which the Board permitted to be introduced over Appellant's objection, which survey constitutes a self-serving declaration and hearsay evidence. Appellant's last contention is whether or not the decision is supported by reliable, material, probative, and substantial competent evidence. The survey, conducted by postcard, was not the only evidence of "public need." A feasibility study for a full branch office of Appellees was conducted by a consulting group called "Market Analysis Group." During this study, Mr. Charles Monnot visited the City of Stillwater, talked with the City Manager, the City Planner, realtors and bankers in the area, and gathered numerous amounts of statistical data and secondary statistical data on population and income. He also did a personal interview survey of residents in Stillwater. The following information was obtained from this survey:

1. During the period from 1960 to 1970, the City of Stillwater increased 29.9 per cent as compared with a 14.5 per cent increase for Payne County and a 9.9 per cent increase for the State.

2. The median income more than doubled during the period 1960 to 1970.

3. Employment increased from 17,550 in 1968 to 19,400 in 1971, which is a 10.5 per cent increase. Unemployment is 3 per cent.

4. Trends in retail sales are reflected by State sales tax collections, during 1970 through 1972, which increased 19.9 per cent for the State, while for the Stillwater area increased 25 per cent.

5. New home construction has increased as reflected by the new permits. During 1970, 100 new permits were issued; during 1971, 237 new permits were issued; and during the first three quarters of 1972, 125 new permits were issued in Stillwater.

6. During the period April 1, 1971, to May 1, 1972, the mortgages recorded were Thirty-three Million, Three Hundred and Eight Thousand, Two Hundred and Ninety-four Dollars [$33,308,294.00].

7. Stillwater will continue to grow. New businesses are being built and the city has called for an election for new city improvements, i. e., street systems, parks, the sanitary system, electrical system, improvements, and improvement expansion in the municipal building and so forth.

8. Bank deposits have increased and their savings ratios are high. Savings and loan deposits have increased 50% between 1970 and 1972.

9. Eighty-two per cent of the households of Stillwater have one or more savings accounts. Eighteen per cent of the residents are contemplating buying a new home within the next two years. Fifty-four per cent of the residents would like to see Ponca City Savings & Loan Association have a branch office in Stillwater.

This study shows that Stillwater is growing and there is a need of the public for a branch office of Appellee, Ponca City Savings & Loan Association.

■ Another method of determining need is the experience, if any, of the applicant in the area to be served. Appellee, although located forty miles away, without a branch office authorized to receive savings in Stillwater, obtained in the market area 1,873 savings accounts, for a total savings deposit of Ten Million, Five Hundred Thirty-six Thousand, Nine Hundred Ninety-one Dollars [$10,536,991.00], and 676 real estate loans in the market area in a total amount of Twelve Million, Five Hundred Ninety-two Thousand, Six Hundred Twenty-seven Dollars [$12,-592,627.00]. Between January 1, 1972, and August 31, 1972, Ponca City Savings & Loan Association made more mortgage loans than Stillwater Savings & Loan Association.

The scope of review of the District Court and of this Court is the same as provided for in 75 O.S.1971, § 322, which provides as follows:

"(1) In any proceeding for the review of an agency order, the Supreme Court or the District or Superior Court, as the case may be, in the exercise of proper judicial discretion or authority, may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:

"(a) in violation of constitutional provisions; or

"(b) in excess of the statutory authority or jurisdiction of the agency; or

"(c) made upon unlawful procedure; or

"(d) affected by other error of law; or

"(e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, as defined in Section 10 of this Act, including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without other-

wise substituting its judgment as to the weight of the evidence for that of the agency on question of fact; or

"(f) arbitrary or capricious; or

"(g) because findings of fact, upon issues essential to the decision were not made although requested.

"(2) The reviewing court, also in the exercise of proper judicial discretion or authority, may remand the case to the agency for the taking and consideration of further evidence, if it is deemed essential to a proper disposition of the issue.

"(3) The reviewing court shall affirm the order and decision of the agency, if it is found to be valid and the proceedings are free from prejudicial error to the appellant. Laws 1963, c. 371, § 22."

■ Thus, we must determine if the Board's decision of public need is clearly erroneous in view of the reliable, material, probative and substantial evidence introduced and has thus prejudiced the substantial rights of the Appellant. See Merrill, Oklahoma's New Administrative Procedure Act, 17 Okla.L.Rev. 1, 51 [1964], where, in discussing the clearly erroneous rule in the Oklahoma Administrative Procedures Act, Professor Merrill stated:

"The court, in other words, is not to determine the weight of the evidence on its own independent judgment. It is merely to decide whether the administrative fact finding is 'clearly erroneous.'"

In Board of Examiners of Veterinary Medicine v. Mohr, Okl., 485 P.2d 235, this Court stated:

"The authority of the District Court to arrive at these conclusions from review of the evidence and to use them as a ground to reverse the Board's order is controlled by 75 O.S.Supp.1963, § 322. Under this statute the District Court may set aside the order upon determining, among other things, that the order was clearly erroneous in view of the reliable, material, probative and substantial competent evidence disclosed by the rec-

**14**

ord, but without substituting its judgment as to the weight of the evidence."

■ Upon review of the entire record, we find that the decision is supported by reliable, material, probative, and substantial competent evidence.

In accord with the foregoing, the judgment of the trial court is affirmed.

WILLIAMS, C. J., HODGES, V. C. J., and DAVISON, LAVENDER, SIMMS and DOOLIN, JJ., concur.

IRWIN, J., concurs in result.