OPEN MEETING LAW — CONFERRING WITH ATTORNEY A governing body as defined in 25 O.S. 201 [25-201] (1971) may meet in executive session to privately confer with the lawyer representing said governing body concerning litigation, pending or impending, without violating the provisions of Section 201. The Attorney General is in receipt of your request for an opinion wherein you ask, in effect, the following question: May the governing body of a public agency such as the Grand River Dam Authority meet in executive session to confer with its attorneys concerning litigation whether pending or contemplated by the agency? Title 25 O.S. 201 [25-201] (1971) provides: "All meetings of the governing body of all municipalities located within the State of Oklahoma, boards of county commissioners of the counties in the State of Oklahoma, boards of public and higher education in the State of Oklahoma and all other boards, bureaus, commissions, agencies, trusteeships or authorities in the State of Oklahoma supported in whole or in part by public funds or entrusted with the expending of public funds, or administering public properties, must be public meetings, and in all such meetings the vote of each member must be publicly cast and recorded. "Executive sessions will be permitted only for the purpose of discussing the employment, hiring, appointment, promotion, demotion, disciplining or resignation of any public officer or employee; provided, however, that any vote or action thereon must be taken in public meeting with the vote of each member publicly cast and recorded. "Any action taken in violation of the above provision shall be invalid "Any member of the Legislature appointed as a member of a committee of either branch of the Legislature or joint committee thereof or a committee of the State Legislative Council shall be permitted to attend any executive session of any state agency, board or commission authorized by this act whenever the jurisdiction of such committee includes the actions of the public body involved." The only clear statutory exception to the duty of a governing board to hold its meetings in public is found in paragraph 2 of Section 201, which provides for executive sessions "for the purpose of discussing the employment, hiring, appointment, promotion, demotion, disciplining or resignation of any public officer or employee." In addition to the so called "personnel" exception the Oklahoma Supreme Court in the case of Stillwater Savings 
Loan Association v. Oklahoma Savings Loan Board, Okl.,534 P.2d 9 (1975), recognized another exception. In the body of the opinion the following language appears: "Appellant further contends that the Board's order was in violation of the 'open meeting law' 25 O.S. 201 [25-201] (1971), et seq., governing state agencies such as the Oklahoma Savings and Loan Board. The 'open meeting law', which was enacted in 1959, does not include hearings before the Oklahoma Savings and Loan Board when it acts in a quasi-judicial manner in individual proceeding (sic) such as the present case." From an analysis of Stillwater Savings Loan, supra, it appears that the Oklahoma Supreme Court has enunciated the principle that when a governing body is deliberating or arriving at its decision there is no need for the decision to be reached in open session. Whether a board or agency may confidentially confer with a lawyer representing the board concerning actual or contemplated litigation is a question of considerable difficulty. The holding of a closed meeting for the purpose of confidentially conferring with counsel by a governing body is not specifically sanctioned by Section 201 nor has the subject been treated by the Oklahoma Supreme Court. As you point out in your request for an opinion, there is an encyclopedic discussion of the relation between an attorney and his client at 7 Am.Jur.2d 93, page 105, wherein it is stated: "The relation between an attorney and his client is highly fiduciary in its nature and of a very delicate, exacting, and confidential character, requiring a high degree of fidelity and good faith. It is purely a personal relation, involving the highest personal trust and confidence, which cannot be delegated without consent." Title 5 O.S. 3 [5-3] (1971) provides in part: "It is the duty of an attorney and counselor: "Fourth. To maintain inviolate the confidence, and, at any peril to himself, to preserve the secrets of his client." In the Code of Professional Responsibility, found at 5 O.S. Ch [5-Ch]. 1, App. 3, there appears the following language at Canon 4 of the Code: "A lawyer should preserve the confidence and secrets of a client." DR 4-101, the disciplinary rule applicable to Canon 4, states: "(A) 'Confidence' refers to information protected by the attorney client privilege under applicable law, and 'secret' refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client. "(B) Except when permitted under DR 4-101(C), a lawyer shall not knowingly: (1) Reveal a confidence or secret of his client. (2) Use a confidence or secret of his client to the disadvantage of his client. (3) Use a confidence or secret of his client to the advantage of himself or of a third person, unless the client consents as to full disclosure. "(C) A lawyer may reveal: (1) Confidences or secrets with the consent of the client or clients affected, but only after a full disclosure to them. (2) Confidences or secrets when permitted under Disciplinary Rules or required by law or court order. (3) The intention of his client to commit a crime and the in formation necessary to prevent the crime. (4) Confidences or secrets necessary to establish or collect his fee or to defend himself or his employees or associates against an accusation of wrongful conduct. "(D) A lawyer shall exercise reasonable care to prevent his employees, associates, and others whose services are utilized by him from disclosing or using confidences or secrets of a client, except that a lawyer may reveal the information allowed by DR 4-101(c) through an employee." The Supreme Court of Florida in the case of Times Publishing Company v. Williams, (Fla.App.), 222 So.2d 470 (1969), held that the provisions of the "public meeting" statute were applicable to every assemblage of a board or commission governed by the statute at which any discussion, deliberation, decision, or formal action was to be had, made, or taken, relating to, or within the scope of, the official duties or affairs of such body. In answering the question as to whether there were any exceptions to the clear mandate of the statute, the Court found that there was a narrow exception where public consultation by a public body with its attorney regarding pending or impending litigation would force him to violate the Canons of Ethics as promulgated by the State Supreme Court. In Times Publishing, supra, a school board contended that it should be allowed to meet behind closed doors to consult with its attorney on legal matters. The Court made the observation that the public acting through the Legislature, had waived the attorney-client privilege with regard to the enumerated public bodies. The Court, however, recognized that an attorney in conducting litigation is bound by the Canons of Ethics governing the legal profession. In conclusion, the Florida Court determined that the Legislature was without authority to interfere with or impair an attorney in the exercise of his ethical duties. It should be noted that the holding in Times Publishing, supra, appears to be limited to the discussion of pending or impending litigation and to no other circumstance. However, in the case of Sacramento Newspaper Guild, etc. v. Sacramento County Board of Supervisors, 263 Cal.App. 41, 69 Cal.Rptr. 480 (1968), in a case where the right of a board to confer privately with its attorney was not abolished by statute, it was held that the open meeting statute did not abrogate a public entity's right to private consultation with its counsel on proper occasions, in light of the fact that the attorney-client privilege might be said to operate concurrently with the open meeting statute. In Sacramento, supra, the California Court observed that the privilege was essentially a means of achieving the policy objective of enhancing the value placed by society upon legal representation by assuring the client full disclosure to the attorney unfettered by fear that others would be informed. The Court went on to say that the passage of an open meeting statute did not show a legislative intent to supersede the assurance of private legal consultation, and that it was possible to read the two statutes together in that they were capable of concurrent operation. In the case of Laman v. McCord, 245 Ark. 401, 432 S.W.2d 753
(1968), the Supreme Court of Arkansas held that the open meeting statute which contained language that all meetings should be open "except as otherwise specifically provided by law" did not countenance a closed meeting for consultation between a city council and its attorney. The Laman case recognized that the attorney-client privilege had been statutorily codified on a general basis, but in light of the statutory language providing for exemption only when "specifically" provided otherwise, the Court refused to recognize the attorney-client relation as an exception to the open meeting law. In that regard, the Court said that to allow the general attorney-client privilege as provided by statute to apply to the consultation of a city council with its attorney in private would amount to a striking of the word "specifically" from the public meeting law. As aforesaid, the Supreme Court of Oklahoma has recognized an exception to the open meeting law other than that contained in Section 201. In the case of Stillwater Savings Loan, supra, the Court used the rationale that the Administrative Procedures Act requires that parties be notified either personally or by mail of any order and, since the order may be mailed, there is no need for a decision to be made in open session. Thus, the Supreme Court by referring to another section of the law has created an exception to the open meeting law. The same reasoning could easily be applied to the statutorily enacted Code of Professional Responsibility in that the open meeting law must be read together with the Canons of Ethics in determining whether the attorney-client relation creates an exception to Section 201. In light of the case law from other jurisdictions, it appears appropriate to recognize the attorney-client relation as an exception to the open meeting law. As was stated by the Court in Sacramento Newspaper Guild, supra, "Where a public discussion of legal problems would benefit the agency's adversary and injure the public interest, the board members may meet privately with their attorney." Further, in the body of the Sacramento Newspaper Guild opinion the following language appears: "Settlement and avoidance of litigation are particularly sensitive activities whose conduct would be grossly confounded, often made impossible, by undiscriminating insistence on open lawyer-client conferences. In settlement advice, the attorney's professional task is to provide his client a frank appraisal of strength and weakness, gains and risks, hopes and fears. If the public's 'right to know' com- pels admission of an audience, the ringside seats would be occupied by the government's adversary, delighted to capitalize on every revelation of weakness. A lawyer worth his salt would feel a sense of treachery in disclosing that kind of appraisal (8 Wigmore Op. Cit. 2291, page 553.) To him its conduct in public would be shocking, unprofessional, unthinkable. He would prefer to fight the lawsuit to its bitter end. Frustration would blunt the law's policy in favor of settlement, and financial imprudence might be a compelled task." The above cited language in Sacramento Newspaper Guild is a lucid and eloquent statement of a rationale which supports the holding that communications between a public agency and the lawyer representing such agency as to pending or impending litigation may be confidential. The State and its subdivisions, acting through the various agencies and commissions, should not be placed at a disadvantage in conducting the public business as against their legal adversaries. The public is undoubtedly entitled to effective legal counsel when it is involved in litigation, and effective legal aid is a virtual impossibility if the opportunity for confidential legal advice is not available. It is, therefore, the opinion of the Attorney General that your question should be answered in the following manner: A governing body as defined in 25 O.S. 201 [25-201] (1971) may meet in executive session to privately confer with the lawyer representing said governing body concerning litigation, pending or impending, without violating the provisions of Section 201. (Michael Cauthron) ** SEE: OPINION NO. 75-222 (1977) **