## JEREMY FUEL & GRAIN CO. et al. v. PUBLIC UTILITIES COMMISSION.

No. 3909.   Decided May 7, 1924.   (226 Pac. 456.)

1. PUBLIC SERVICE COMMISSIONS—ACTS IN FIXING RATES ARE LEGISLATIVE AND REVIEWABLE ONLY IN MANNER AND TO EXTENT STATED IN STATUTE. Public Utilities Commission, in fixing and promulgating rates or charges, acts merely as arm of Legislature, and cannot exercise judicial functions, so that its acts are reviewable by Supreme Court only in manner and to extent stated in Comp. Laws 1917, § 4834.[1]

2. CARRIERS—PARTICULAR PHRASES OR SENTENCES IN TARIFF SHEET CONSIDERED IN CONNECTION WITH FOOTNOTES OR OTHER EXTRANEOUS MATTERS. While freight tariffs should be construed according to plain import of language employed, particular phrases or sentences in tariff sheet must be considered in connection with subject-matter and circumstances to which language refers, such as footnotes or other extraneous matters, technical terms must be given their full meaning and effect.

3. COMMERCE—INTERSTATE COMMERCE COMMISSION'S RULES OF CONSTRUCTION CANNOT AFFECT PUBLIC UTILITIES COMMISSION'S DE-

---

[1] *Salt Lake City* v. *Utah Light & Traction Co.*, 52 Utah, 210, 173 Pac. 556, 3 A. L. R. 715.

Certiorari

CISION AS TO REASONABLENESS OF RATES. Abstract rules of construction stated in opinions of Interstate Commerce Commission in proceedings before it cannot affect Public Utilities Commission's decision as to whether freight rates or other charges are unreasonable and discriminatory.

4. CARRIERS—SUPREME COURT CANNOT REVIEW ERRORS OF JUDGMENT IN FIXING RATES. Under Comp. Laws 1917, § 4834, Supreme Court cannot review mere errors of judgment by Public Utilities Commission in fixing rates, a legislative, not judicial function; commission's findings, based on evidence, being conclusive.

5. CARRIERS—SUPREME COURT CANNOT DIRECT UTILITIES COMMISSION TO ALLOW REPARATIONS ON SHIPMENTS OF COAL SOLD BY DEALERS IN ACCORDANCE WITH TARIFF RATES PAID BY THEM. In view of Comp. Laws 1917, § 4838, authorizing Public Utilities Commission to order reparations only where no discrimination will result, Supreme Court would not direct Commission to allow or disallow reparations on shipments of coal sold by dealers in accordance with alleged excessive tariff rates paid by them.

Application by Jeremy Fuel & Grain Company and others, for writ of review against the Public Utilities Commission.

Findings and conclusions of Commission AFFIRMED.

*Ball, Musser & Robertson,* of Salt Lake City, for plaintiffs.

*H. H. Cluff,* Atty. Gen., and *W. Hal Farr,* Asst. Atty. Gen., and *Van Cott, Riter & Farnsworth,* of Salt Lake City, for defendant.

FRICK, J.

The plaintiffs, pursuant to our statute, made application to this court for a writ of review against the Public Utilities Commission of Utah, hereinafter called Commission. The writ was duly issued, and in obedience thereto the Commission has certified to this court a complete transcript of the proceedings had before it in the proceeding hereinafter referred to.

It appears from the transcript aforesaid that the plaintiffs

are coal dealers in Salt Lake City, Utah, and as such commenced a proceeding before the Commission against the Denver & R. G. R. R. Co., in which, stating it in the language of their counsel, plaintiffs "asked for reparation on shipments of coal that had been made from various points of origin in the Castle Gate Group of mines  *  *  *  to Salt Lake City from March 8, 1917, to December 31, 1917." Reparation was sought upon the grounds that the freight charges by said railroad company were excessive; that they were "as a matter of law discriminatory"; that the "charges exacted were in violation of the long and short haul clause, and that the charges were unreasonable." Plaintiffs therefore insisted that the Commission should order the railroad company to repay to them large sums of money as reparation for the alleged excessive freight rates paid by them to said company.

The railroad company appeared in the proceeding before the Commission, produced evidence there, and has filed a brief in this court.

The Commission has certified to this court many hundreds of pages of oral testimony as well as many pages of documentary evidence which was submitted to the Commission by both sides on the hearing on plaintiffs' application. The plaintiffs in their brief have set forth the tariff sheet which they contend controlled the shipments in question. The Commission, as hereinafter appears, held that the rates contained in said sheet were proportional rates and did not control the shipments here in question. For plaintiff's benefit we here append the tariff sheet referred to, which reads as follows:

Certiorari

| Commodity. | From | Index No. | To | Rate in Cts. (Per Ton of 2000 Lbs.) |
|---|---|---|---|---|
| Coal Bituminous, C. L. Min. 40,000 lbs. (C.F.17—4478) | Clear Creek, Utah Winter Quarters, Scofield, Utah Hale, Utah Castle Gate, Utah Storrs, Utah Standardville, Utah (C. F. 17—4918) | | Midvale, Utah | 125* |
| | Helper, Utah, Price, Utah Panther, Utah Cameron, Utah E. Hiawatha, Utah Mohrland, Utah | | Salt Lake City, Utah | 125*† |
| | Black Hawk, Utah | | Midvale, Utah | 135* |
| | Sunnyside | | Salt Lake City | 125*† |

*Reduction.   †Applies only on traffic destined to stations on the Salt Lake & Los Angeles R. R.

In view that plaintiffs' contention is clearly stated by the Commission in its decision, we here take the liberty of reproducing that statement, viz.:

"That between 1917 and February, 1918, the defendant published and filed with the Public Utilities Commission of Utah, a rate of $1.25 per ton, in carload lots, from points of origin to Salt Lake City, except from the stations of Sunnyside and Thompson, which was $1.35 per ton; that coal was shipped over said route from its origin to said destination in keeping with the said rates to consumers other than the plaintiffs herein; and for such transportation the defendant demanded and collected the sum of $1.60 per ton on all coal, with the exception of slack for which a charge of $1.30 per ton was paid (except from Sunnyside and Thompson, which was $1.70 and $1.40, respectively), and that such rates and charges were collected during the times mentioned in the complaint, from the same points of origin along the same route as

that shipped and delivered to the Salt Lake, Garfield & Western Railroad Company for the sum of $1.25 per ton; that the rates demanded and collected from complainants herein were in excess of the legal rates, and that said excessive rates so collected were unlawful, unjust, unreasonable and discriminatory to the extent that they exceeded $1.25 per ton, and to that extent that the said rates exceeded the rates carried in Supplements Nos. 8, 9 and 10 to D. & R. G. Freight Tariff 4614–E. That said rates, charged and collected, were excessive and unreasonably high."

The Commission, after stating the contentions of the defendant, in its decision comments as follows:

"The hearing on the above case began March 11, 1920. The evidence submitted by the complainants was to the effect that they were dealers and shippers of coal transported by the defendant company, and that the rates paid during the time in question were as set out and alleged, namely, $1.60 per ton for coal other than slack, and $1.30 per ton for slack coal; that the rate collected from the Salt Lake, Garfield & Western Railway Company was $1.25 from Carbon county points to Salt Lake City; that some of the bills of lading carried Salt Lake City as the destination while others were designated Salt Lake, Garfield & Western Railway; that cars of coal were shipped to Salt Lake City and placed on the track for exchange with the Salt Lake, Garfield & Western Railway Company and taken to the yards of said Salt Lake, Garfield & Western Railway Company and consumed by it for fuel and power purposes; that the coal so delivered to the Salt Lake, Garfield & Western Railway was not sold in competition with the coal shipped to the complainants herein, with the exception of a limited amount which was used in Salt Lake City without knowledge or consent of said defendant company and for which said Salt Lake, Garfield & Western Railway Company was required to pay an additional freight rate, sufficient to increase the rate to $1.60 per ton.

"Considerable testimony was submitted, consisting of tariff, waybills, etc., special attention being called to the destination of coal shipped to the Salt Lake, Garfield & Western Railway Company; also to the question of excessive, unreasonable rates in connection with the movement of coal.

"In the matter of tariffs, rates and waybills referred to, it might be well here to call attention to Case No. 9, *Marsh Coal Company et al. v. Denver & Rio Grande Railroad Co.*, in which this Commission carefully and clearly analyzed and passed upon the main question raised in this case. See pages 64, 65, 66, 67 and 68, Report of Public Utilities Commission of Utah, volume 1, which analyzes the testimony in said case and finds the issues against the contention of plaintiffs in said case, which would seem to be decisive of the questions raised here. Unless additional evidence has been

given to take it outside of the rule laid down in that case, we are of the opinion that the evidence does not justify the Commission in holding adversely to the rule promulgated in said case No. 9. * * *"

The Commission then quotes from Comp. Laws Utah 1917, parts of sections 4788 and 4838, as follows:

"4788. Except as in this section otherwise provided, no public utility shall charge, demand, collect, or receive a greater or less or different compensation for any product or commodity furnished or to be furnished, or for any service rendered or to be rendered, than the rates, tolls, rentals, and charges applicable to such products or commodity or service as specified in its schedules on file and in effect at the time. * * *"

"4838. When complaint has been made to the Commission concerning any rate, fare, toll, rental, or charge for any product or commodity furnished or service performed by any public utility, and the Commission has found, after investigation, that the public utility has charged an excessive or discriminatory amount for such product, commodity, or service in excess of the schedules, rates, and tariffs on file with the Commission, or has discriminated under said schedules against the complainant, the Commission may order that the public utility make due reparation to the complainant therefor, with interest from the date of collection: Provided, no discrimination will result from such reparation."

The Commission concludes:

"So, under the above provisions, the rates, schedules and tariffs on file with the Commission, at the time complained of, were the schedules, rates and fares charged and collected from complainants, and not in excess thereof. No order of reparation could legally be made by this Commission. As to the question of proportional rates, the Commission finds that the rates attacked by the complainants and collected by the defendant company were the legal rates at the time complained of, and that the charge of $1.25 per ton, charged the Salt Lake, Garfield & Western Railway Company, was a proportional rate."

In arriving at a proper conclusion in this proceeding it is of the utmost importance that we keep in mind that the Commission, in fixing and promulgating rates or charges for services rendered by the public utilities of this state acts merely as an arm of the Legislature and that in discharging its duties the Commission cannot, and does not, exercise judicial functions. Its acts are therefore reviewable by this court only in the manner and to the extent stated in

the statute. In view that the reasons why the power of this court to review the acts of the Commission is limited are fully set forth in *Salt Lake City* v. *Utah Light & Traction Co.*, 52 Utah 210, 173 Pac. 556, 3 A. L. R. 715, it is not necessary to repeat those reasons here.

It is, however, important to keep in mind the provisions of our statute relating to that subject. Comp. Laws Utah 1917, § 4834, where the powers of this court to review the decisions of the Commission are enumerated, provides:

"The review shall not be extended further than to determine whether the Commission has regularly pursued its authority, including a determination of whether the order or decision under review violates any right of the petitioner under the Constitution of the United States or of the State of Utah. The findings and conclusions of the Commissions on questions of fact shall be final and shall not be subject to review. Such questions of fact shall include ultimate facts *and the findings and conclusions of the Commission on reasonableness and discrimination.*" (Italics ours.)

Here, thus, is a clear, explicit and unambiguous statement of both the power and the limits of that power. Beyond that we cannot go.

As before stated, the decision of the Commission is based upon both oral and documentary evidence which covers many hundreds of pages of typewritten matter. Some of the evidence most favorable to plaintiffs' contention is copied in their brief. It is not contended, however, that, notwithstanding all of the evidence produced by them and by the railroad company at the hearing, the controversy, nevertheless, should be determined in their favor as a matter of law. In support of their contention they cite, among other cases, the following: *Crescent Coal & M. Co.* v. *C. & E. I. R. R. Co.*, 24 I. C. C. 156; *Aransas Pass C. & D. Co.* v. *G., H. & S. A. Ry. Co.*, 27 I. C. C. 409; *Haskew Lbr. Co.* v. *N., C., & St. L. Ry.*, 34 I. C. C. 335; *Wausau Advancement Ass'n* v. *C. & N. W. Ry.*, 28 I. C. C. 460. The gist of the opinions in the foregoing cases is that "tariffs should be construed according to the plain import of the language employed therein." No doubt the foregoing is a correct statement of the law so far as it goes. In order to arrive at the meaning, however, of a particular phrase or sentence that may be used in a

tariff sheet, or elsewhere, the phrase or sentence must always be considered in connection with the subject-matter and the circumstances to which the language refers. If, therefore, reference is made to footnotes or to other extraneous matters, the notes or other references, if any, must be considered in connection with the language used, and if there are any technical terms used these must likewise be given their full meaning and effect. Then again, if it becomes necessary to produce evidence, as was the case in the proceeding before the Commission, that also must be considered so far as material in arriving at a just conclusion. Moreover, all of the foregoing citations to which reference has been made are merely opinions rendered by the Interstate Commerce Commission in proceedings pending before it, and are not authoritative decisions emanating from courts of last resort. We make the foregoing observation merely to show that in those cases the Interstate Commerce Commission merely stated abstract rules of construction which in no way can or do affect, much less control, the decision of the Commission which we are asked to review.

In this proceeding the Commission spent many days in hearing evidence and went into the whole matter, including the footnotes and other references contained on the tariff sheet, and after hearing all the evidence, including matters submitted to it upon a rehearing, the Commission arrived at the conclusion which it deemed to be in accordance with the evidence and conformable to our statute. In addition to all that, the tariff sheets in question were on file with the Commission as provided by our statute.

The plaintiffs and numerous others, as the record discloses, paid the tariff rates demanded, which the defendant contended, and which the Commission found, were the rates designated in the tariff sheet here in controversy. The finding of the Commission was necessarily based upon the evidence submitted to it both for and against plaintiffs' contention. It may be conceded that in considering the evidence submitted by both sides the Commission may have erred in its judgment in arriving at a conclusion. If that be so, however, it is not a matter that this court can correct.

This court may likewise err in attempting the same thing. Be that as it may, however, the Legislature has withheld from us the right to review mere errors of judgment, precisely as it has withheld from us the right to review the judgments of the Legislature itself in fixing rates. The fixing of rates is a legislative and not a judicial function. The Commission decided that the rate charged was not unreasonable, excessive, or discriminatory. The statute, as has been shown, expressly provides that such conclusions of the Commission, when based upon the evidence, are to be considered as facts and are not reviewable. Whether a particular rate is or is not unreasonable or discriminatory no doubt may depend upon many facts and circumstances, all of which must be considered by the Commission. Where such is the case and the Commission has found the facts, we cannot interfere, although we might be inclined to find them different.

Then again, one of the controlling questions before the Commission was whether the rate in question was a proportional rate. The Commission, upon the whole evidence, found it to be a proportional rate. That, standing alone, is a very strong circumstance why the decision of the Commission should be upheld. No constitutional rights are involved, and none are claimed.

In addition to all that has been said, however, the further question arises, namely: Can this court direct the Commission to allow or to disallow reparations in such cases? Our statute (section 4838, supra) provides that the Commission may order the public utility to make reparations only in cases where "no discrimination will result from such reparation." Where, therefore, as here, plaintiffs have sold coal to their customers in accordance with the tariff rates paid by them, how can this court, as matter of law, say that to allow them to recover back a certain amount of the freight paid by them will not result directly or indirectly in discrimination in favor of the plaintiffs? The Commission may or may not have considered that phase of the matter.

Keeping in mind, also, that the Commission found that the rates in question here were the rates that were on file with

the Commission at the time the alleged excessive charges were paid by the plaintiffs and that the charges paid by them were the regular rates and were not excessive, how can this court interfere without setting aside the findings of the Commission and thus disregard our statute?

Finally, we remark that we do not deem it necessary in this proceeding to consider the question raised by the Attorney General, namely, whether the Commission has the power to make reparation in a proceeding like the one in question. While it is true, as contended by the Attorney General, that some courts have held that the Commission is without jurisdiction under statutes similar to ours, yet, in view that the findings and conclusions of the Commission must be sustained upon other grounds, that question is not necessarily involved, and hence we express no opinion upon it. We, however, take the liberty of here citing among other cases which are referred to by the Attorney General the following: *Texas & Pac. Ry. Co.* v. *Road Comm. of La.*, 137 La. 1059, 69 South. 837, followed in *Ford* v. *La. S. R. Co. P. U. R.* 1916A, 342; *Santa Fé Coal & Copper Min. Co.* v. *Atchison, T. & S. F. Ry. Co.*, 21 N. M. 496, 155 Pac. 1093; *Taylor-Williams Coal Co.* v. *Public Utilities Comm. of Ohio*, 97 Ohio St. 224, 119 N. E. 459; *Wheeling Steel Corp.* v. *Public Service Commission*, 90 W. Va. 74, 110 S. E. 489, P. U. R. 1922D, 67.

For the reason stated, this court is of the opinion that the finding and conclusions of the Commission should be, and they accordingly are, sustained and affirmed, with costs.

WEBER, C. J. and GIDEON, THURMAN, and CHERRY, JJ., concur.