## UTAH-IDAHO CENT. RY. CO. v. PUBLIC UTILITIES COMMISSION.

No. 3987.   Decided July 25, 1924.   Rehearing Denied August 14, 1924.   (227 Pac. 1025.)

1. ELECTRICITY—COMMISSION—WITHOUT POWER TO GRANT REPARA-TIONS WHEN RATE COLLECTED IN ACCORDANCE WITH SCHEDULES. The Public Utilities Commission had no power under Comp. Laws 1917, § 4838, or other provisions of the Public Utilities Act, to grant reparations to a power company's customer, where the rate collected was that specified in the company's schedules then on file.[1]

2. PUBLIC SERVICE COMMISSIONS—RATES FIXED BY PUBLIC UTILITIES COMMISSION DEEMED PERMANENT, IN ABSENCE OF EXPRESS CONTRARY PROVISION. Public utility rates fixed by the Public Utilities Commission must be deemed permanent, unless the Commission expressly provides to the contrary, and in the order itself provides what the rights of the parties shall be with respect to the rates.

Original proceeding by the Utah-Idaho, Central Railway Company against the Public Utilities Commission of Utah on writ of review.

AFFIRMED.

*DeVine, Howell, Stine & Gwilliam,* of Ogden, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., and *John F. MacLane,* of Salt Lake City, for defendant.

FRICK, J.

On October 19, 1922, the Utah-Idaho Central Railway Company, hereinafter called plaintiff, made application to the Public Utilities Commission of Utah, defendant in this proceeding, to recover reparations from the Utah Power & Light Com-

[1] *Jeremy Fuel & Grain Co.* v. *Public Utilities Commission,* 63 Utah 392, 226 Pac. 456.

pany, hereinafter called company, for alleged overcharges for electric power furnished by the company to plaintiff. Both the plaintiff and the company are public utilities in this state. The plaintiff operates an electric railway, while the company generates, sells, and distributes hydroelectric current for power and light purposes. The facts upon which plaintiff relies for reparations are very fully stated in its application filed with the commission. In view that we shall state the facts necessary to a full understanding of the points decided, we shall not refer to plaintiff's application further.

The company filed a motion to dismiss plaintiff's application, which motion was supported by a full statement of the grounds upon which it was based. After hearing elaborate arguments upon the motion, and after fully considering the same, the commission granted the motion and dismissed plaintiff's application. The plaintiff then filed its application for a rehearing, which, in due time, was denied by the commission. The plaintiff then, pursuant to our statute, filed an application in this court for a writ of review against the commission. A writ was duly issued, and in obedience thereto, the commission has certified to this court the record of the proceedings had before it upon plaintiff's application and the company's motion. In addition to the briefs filed by the parties they were also heard orally and the cause was submitted upon the arguments, and the record certified to this court, as before stated.

From the record it is made to appear that the commission filed a very elaborate opinion or decision in disposing of the plaintiff's application and the company's motion to dismiss, in which the facts and proceedings upon which plaintiff's application for reparations and the company's motion to dismiss were based are fully stated. We shall have recourse to the facts as they are disclosed in the decision of the commission.

It appears from that decision that the commission had promulgated certain rates that the company was permitted to charge for electric current used for power purposes. It further appears that in promulgating the rates the commis-

sion ordered that electric railroad should be required to pay at the ratio of 70 per cent. of the highest amount of electric power that they used for a fixed period during each day of 24 hours. Afterwards, upon application of plaintiff, the commission promulgated further rates to be charged for electric power, which rates were also made applicable to railroads operated by electricity. The rate fixed by the commission was at a ratio of 70 per cent. of the highest amount used for a given period during the day, for railroads having power delivered to them at two points on their lines of railroad, and at the ratio of 55 per cent. for railroads having power delivered to them at more than two points. That is, the railroads coming within the first class were required to pay 70 per cent. of the highest amount of power used by them for an average period of five minutes on each day, and railroads coming within the second class were required 55 per cent. of the highest amount used for an average period of five minutes each day. Stating it in the commission's own language, the order allowed a—

"maximum demand for electric interurban and street railroads of 70 per cent. of the highest five-minute average peak for all railroads having not more than two points of delivery for electric power, and a maximum demand of 55 per cent. of the highest five-minute average peak for all electric railroads with more than two such points of delivery."

The order concluded as follows:

"Ordered further that such amended rule shall be made effective upon five days' notice to the public and to the commission."

The reason for the different percentages arose out of the irregular distribution and operation of trains over parts of the railroad line and at different times of the day and night. It is very apparent, however, from the record, that the commission, in fixing and promulgating the rates upon the percentages just stated, attempted to regulate the rates or charges for electric power so as to make them fair, just, and equitable, not only to the electric roads, but also to all other power users, as well as to the company. It also appears that the plaintiff comes within the class of railroads that were required to pay only 55 per cent. of the highest

amount used as before stated. As before stated, in October, 1920, the commission promulgated the rate of 70 per cent. of the highest amount used by all electric railroads, and that the plaintiff was required to and did pay the company at the rate of 70 per cent., from October, 1920, to May, 1922, when the order was made by the commission, reducing the rate from 70 per cent. to 55 per cent. for all roads coming within plaintiff's class. Plaintiff therefore contends that in view that the rate was reduced in May, 1922, from 70 per cent. to 55 per cent. therefore the rate of 70 per cent. paid by it between October, 1920, and May, 1922, was excessive and discriminatory, and hence the commission should have allowed its claim for reparations for the amount that plaintiff paid in excess of 55 per cent. during the period of time just stated. ·

Plaintiff, however, further contends that, although it should be held that the 70 per cent. rate was not excessive and discriminatory, yet it should recover because the 70 per cent. rate was only a temporary rate, which was subject to change at any time. The commission decided against plaintiff upon both contentions.

As to the first point, the commission held that it had no jurisdiction or power to make the reparations asked for by the plaintiff. Upon that point, the commission, among other things, said:

"It appears to us that such an order cannot be made either under the statute [Comp. Laws Utah, 1917, § 4838] as before quoted, or under any broader interpretation of the commission's powers which might be said to be drawn from the Public Utilities Act as a whole. The statute authorizes reparations only when a utility has charged 'an excessive or discriminatory amount for such * * * service, in excess of the schedules on file with the commission, or has discriminated in said schedules against the claimant.' * * *"

The commission then proceeds:

"It is admitted that the charge is in accordance with the schedules, also the only charge which could have been made at the time, under such schedules, could not possibly constitute, as claimed by the petitioner, 'discrimination under such schedules,' since it is

admitted that the schedule, during the time it was in force, was properly construed and applied to the service."

The commission therefore found that the rate of 70 per cent. was the regularly published rate; that it was the only rate the company was authorized to impose, and that it was not a discriminatory rate. In holding against plaintiff's first contention, the commission was clearly within the rule laid down in the recent case of *Jeremy Fuel & Grain Co.* v. *Public Utilities Commission,* 63 Utah, 392, 226 Pac. 456. Indeed, plaintiff's counsel conceded at the hearing that the decision of the commission upon the first point comes squarely within the decision of the *Jeremy Fuel & Grain Company Case.*

Counsel, however, insist that the commission should have allowed reparations upon the second ground, namely, that the 70 per cent. rate was merely a tentative rate when promulgated, and was subject to change by the commission, and that, when it reduced the 70 per cent. rate to 55 per cent. the latter constituted a permanent rate, and the only rate the company was authorized to charge. The commission also elaborately considered plaintiff's contention upon the second point. From the commission's decision, it appears that when the 70 per cent. rate was promulgated, in October, 1920, it was treated as all rates are treated, namely, as the established rate to be charged by the company, and to be paid by the plaintiff and the other electric railroads. The commission points out that no rehearing was asked for and that the rate continued in force until, upon a further and independent application and hearing, the rate was changed and established at 70 per cent. for one class and at 55 per cent. for the other class. The commission, in speaking of the first 70 per cent. order, said:

" * * * The order * * * was a final order, so far as any rate order is final; that is to say, it fixed a definite schedule of rates, to be in force until thereafter modified."

The commission further said:

"No reservation of the jurisdiction to make a retroactive order with respect to this service was made,"—referring to the differential of 70 and 55 per cent. rate.

The commission accordingly held that, in view that the 70 per cent. rate was subject to change in precisely the same manner and sense as all rates that are promulgated by it are subject to change, the rate was a final and permanent rate, in so far as the public and the interested parties are concerned.

We are of the opinion that the commission was clearly right. If a party who is affected by a rate may apply for and receive reparations every time a rate is reduced, it follows that every time the rate is raised the party furnishing the service must also be permitted to apply for and receive the amount of the increase. There would, thus, never be any point at which a rate could be said to be permanent. The fact is that in the very nature of things the rates promulgated by the commission must be deemed permanent, unless the commission expressly provides to the contrary, and in the order itself provides what the rights of the parties shall be, with respect to the rates. Moreover, rates or charges for service rendered by a public utility, like those rendered by the company in the instant case, in the very nature of things, require adjusment either up or down from time to time, as changes in conditions or circumstances may require. The rates that are promulgated must, however, be deemed the rates to be charged upon the one hand and paid upon the other, whether they continue in force for a long or for a short period, unless the commission orders otherwise in the order promulgating the rates.

After a careful scrutiny of the record we are forced to the conclusion that there is nothing made apparent upon which we could base a justification for interfering with the commission's decision. The decision is therefore affirmed, with costs.

WEBER, C. J. and CHERRY, J., concur.

GIDEON and THURMAN, JJ., being disqualified, did not participate in the disposition of this cause.

### On Application for Rehearing.

PER CURIAM. Counsel for plaintiff have filed a petition for rehearing, in which it is contended that this court erred in that it failed to pass upon the section of the statute upon which they had based their application for reparation. In their argument in support of the petition for rehearing, it is contended that they had invoked the section following the one that we passed on in the opinion. As to that section they say:

"This section provides that when a public utility has discriminated under its schedules against the complainant, the commission may order the public utility to make due reparation."

That is the very proposition we passed on, and in the opinion quoted that part of the commission's decision which related to the provision of the statute, counsel say they now invoke. It seems that they have entirely overlooked that part of the opinion and hence we can readily understand why they feel aggrieved. In view, however, that the whole matter was considered by this court, and nothing new is presented in counsel's argument in support of the petition for rehearing, the same should be and hereby is, denied.