COMMON CAUSE OF UTAH, an
Unincorporated Association, et
al., Plaintiff and Respondent,

v.

UTAH PUBLIC SERVICE COMMISSION
et al., Defendants and Appellants.

Nos. 15685, 15697.

Supreme Court of Utah.

July 11, 1979.

Robert B. Hansen, Atty. Gen., Theodore
L. Cannon, Salt Lake County Atty., for
Utah Public Service Commission.

Parson, Behle & Latimer, Salt Lake City,
for Mountain Fuel Supply Co., intervenor.

James Watt, Denver, James Lee, David Bird, Salt Lake City, for Mountain States Legal Foundation, amicus curiae.

Alan E. Walcher, Robert S. Campbell, Jr., H. Wayne Wadsworth, Salt Lake City, for plaintiff and respondent.

CROCKETT, Chief Justice:

In this action the parties seek a determination as to the extent that our "Open and Public Meetings Act"[1] requires the defendant Public Service Commission to conduct its affairs in sessions open to the public.

The portions of the Act pertinent to that problem are Section 52–4–1 which states that:

In enacting this chapter, the legislature finds and declares that the state, its agencies and political subdivisions exist to aid in the conduct of the people's business. *It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly.*

Section 52–4–2 then states what constitutes a "meeting" and which "public bodies" are covered by the Act. Subsection (1) defines a meeting as:

. . . the convening of a public body . . . for the purpose of discussing or acting upon a matter over which the public body has jurisdiction or advisory power.

Subsection (2) defines public body as:

. . . any administrative, advisory, executive or legislative body of the state . . . which consists of two or more persons that . . . is vested with the authority to make decisions regarding the public's business.

The key provision is in the next Section, 52–4–3, which mandates that:

*Every meeting is open to the public unless closed pursuant to Sections 52–4–4 and 52–4–5.*

Section 52–4–4 provides that a closed meeting may be held if two-thirds of the members of the public body vote to do so, but it also adds that when such a closed meeting is held, "no ordinance, resolution, rule, regu-

lation, contract, or appointment shall be approved" at such a meeting.

There being no disagreement as to facts, the parties submitted the matter to the court on their respective motions for summary judgment. The court entered its interpretation of the above quoted statutes as follows:

. . . *the Utah Open and Public Meetings Act . . . applies to and governs the meetings of the Utah Public Service Commission wherein that public body deliberates,* votes upon, establishes, *or otherwise evaluates* existing or proposed public utility rates, tolls, charges, rentals, or classifications. The . . . Act *requires the Public Service Commission to exercise these legislatively delegated rate making powers in proceedings open to the public* unless such meetings are closed by the Commission pursuant to Sections 52–4–4 and 52–4–5 of the Act. [All emphasis herein added.]

On the Commission's behalf, it is contended that this interpretation of the statutes by the district court is overbroad: particularly, the language which requires that when the Commission "deliberates . . . or otherwise evaluates" issues upon which it must pass, that must be done "in proceedings open to the public." The Commission asserts that this is impractical and unduly restrictive as to the manner in which it must operate in discharging its responsibilities. It urges that in conducting its deliberations and arriving at its judgments, it is either acting as a judicial body, or at least as a quasi-judicial body, and therefore is not governed by the requirements of the Act.

Consideration of the problem presented herein requires a balancing of two competing interests: on the one hand, the obviously desirable objective of giving the public, whose interests are involved, the fullest possible degree of knowledge of the matter under consideration, and of affording the opportunity to supply information and to engage in dialogue and the exchange of ideas. The other interest to be served is

---

1. U.C.A.1953, 52–4–1 et seq., often referred to as a "Sunshine law."

that, after all of the evidence and information has been furnished to the Commission, the process of analysis, deliberation, and arriving at a decision, should be permitted to take place in an atmosphere of peace and privacy, free from the possibility of undue pressures from the presence of partisans, so that the commissioners have the opportunity for a frank and unrestricted discussion and exchange of ideas in order that they can arrive at the best possible decision in the interests of all concerned.[2]

The Commission is charged with multifarious duties, many of which are legislative and administrative. But it is not to be doubted that some of the duties it is required to perform are properly regarded as quasi-judicial and judicial in nature.[3] The subject has been discussed in cases decided by this Court. In *Jeremy Fuel & Grain Co. v. Pub. Util. Comm.*,[4] it was stated that certain functions of the Commission are legislative.[5] However, our later decisions point out that that is not exclusively so. The case of *Mulcahy v. Public Service Commission*,[6] relied on by the defendants, referred to the legislative character of the duties of the Commission. But from a reading of the opinion, it will be noted that three of the Justices, two in dissent, and Justice Wolfe concurring specially, expressed the view that some of the functions of the Commission are judicial. In his concurrence, Justice Wolfe perceptively and accurately observed:

I must issue a warning against denominating such bodies as executive, legislative, or judicial . . . He indeed is to be congratulated who can pick out the legislative, the executive, and the judicial ingredients of many . . . administrative processes. . . . They are *administrative* acts which involve, in many cases, an inextricable mixture of all three functions.[7] [Emphasis in original.]

That idea finds support in the statutory framework by which the Commission is created and its powers and duties are set forth. It is required to decide questions concerning the enfranchising and the various aspects of the operation of utilities. This sometimes involves proceedings of an adversarial nature in which the Commission hears and determines issues which are disputed between competing and protesting utilities.

In carrying out some of those responsibilities, the Commission is required by law to operate very much in the same manner as courts. It is empowered to conduct hearings, administer oaths, compel attendance of witnesses, obtain depositions and the production of documents.[8] Its decisions are required to be supported by written findings.[9] Moreover, similar procedures are provided for rehearings,[10] and a review by this Court.[11] It is because of what has just been said that we have recognized that the Commission is required to and does perform some functions of a judicial nature.[12] This is in accord with rulings of the courts of our sister states, who have held that, as to the deliberative processes by which administrative agencies arrive at their decisions, their function is judicial, and that, as to that phase of their activities, the "Sunshine Laws" should not apply.[13]

---

**2.** For an excellent discussion concerning the balancing test to be applied, see Open Meeting Statutes: The Press Fights for the Right to Know, 75 Harv.L.Rev. 1199 (1961–62).

**3.** The legislature has itself referred to the Commission as exercising quasi-judicial functions. See Sec. 13–1–1.3 U.C.A.1953.

**4.** 63 Utah 392, 226 P. 456 (1924).

**5.** See also *Mountain States Telephone & Telegraph Co. v. Pub. Serv. Comm.*, 107 Utah 502, 155 P.2d 184 (1945).

**6.** 101 Utah 245, 117 P.2d 298 (1941).

**7.** Id. at 306–307.

**8.** U.C.A.1953, 54–7–1 to 54–7–3.

**9.** U.C.A.1953, 54–7–5.

**10.** U.C.A.1953, 54–7–15.

**11.** U.C.A.1953, 54–7–16.

**12.** See e. g. *Wycoff v. Pub. Serv. Comm.*, 13 Utah 2d 123, 369 P.2d 283 (1962).

**13.** See *School Dist. No. 9 v. District Boundary Board*, Wyo., 351 P.2d 106 (1960); *Stillwater Savings & Loan Ass'n v. Oklahoma Savings &*

We are appreciative of the merit of the defendant's argument that it is highly desirable, or perhaps even essential, that those who are required to perform judicial duties should be permitted to do so in a judicial manner; and we agree with the proposition that where judicial duties and powers are conferred, there is necessarily implied therein the prerogative of carrying out those duties in the way the judiciary traditionally functions. It is quite unnatural to expect that a commissioner will not be thinking, i. e. "deliberating," upon such matters in private. This may be while riding home, or sitting in his favorite chair, or shaving, or whatever. His mind is with him and presumably will be mulling over such problems. But as will be seen from what is said herein, we see no reason why that cannot be done without any direct conflict with the "Sunshine Law" statutes, if they are given a practical application.

Notwithstanding what has just been said about judicial aspects of the functions of the Commission, and the desirability of its having the prerogative of performing those functions in the traditional judicial manner, there are certain fundamental propositions relating to the cited statutes to be confronted and dealt with. The first is that the Commission itself is a creation of legislative enactment and derives both its authority and its duties therefrom.[14] It would seem in harmony therewith that it should follow the mandates of the legislature as to the manner in which it operates; and should therefore comply with the spirit and purpose of the Sunshine Act, insofar as it is practicable to do so. To that end, if the expressions of the statute appear to place restrictions on the means essential to the carrying out of the Commission's responsibilities, the effort should be made to give the statute a practical application in such manner as to avoid or reconcile any such apparent inconsistency or conflict, so that the Commission may function properly and effectively.

In regard to the problem under consideration herein, a distinction should be made between the Commission's activities when it is convened as a public body for the purpose of conducting hearings, taking evidence, or hearing arguments, discussions or suggestions, which we may refer to as the "information obtaining" phase of its activities, as distinguished from its analyzing and contemplative processes, which we refer to as the "decision making" phase of the Commission's activities.

From a reading of the above quoted statutes (the Sunshine Law), it is clear that the legislature intended that any official meeting of the Commission, wherein it performs the "information obtaining" phase of its activities, should not be held in private or in secret, but should be open to the public. However, once the "information obtaining" procedure has been completed, it is essential that during the "decision making" or judicial phase, those charged with that duty have the opportunity of discussing and thinking about the matter in private, free from any clamor or pressure, so they can calmly analyze and deliberate upon questions of fact, upon the applicable law, and upon considerations of policy, which bear upon the problems with which they are confronted.

It is undoubtedly in recognition of the desirability and practicality of such procedure that the Act includes Section 52–4–4 which provides that a closed meeting may be held if two-thirds of the members (two of the three commissioners) vote to do so. Whether the "decision making" phase is accomplished in such private meeting, or in private deliberations, it is to be observed that that statute further provides that at such a closed meeting, "no ordinance, resolution, rule, regulation, contract, or appointment shall be approved." In conformity with that statute, any final and formal action of the Commission on such matters should be announced or issued in a meeting open to the public.

*Loan Bd., Okl.,* 534 P.2d 9 (1975); *Arizona Press Club, Inc. v. Arizona Bd. of Tax Appeals,* 113 Ariz. 535, 558 P.2d 697 (1976); *Jordan v. Dist. of Columbia,* D.C.App., 362 A.2d 114 (1976).

14. See U.C.A.1953, 54–4–1 et seq.; *Utah Copper Co. v. Pub. Util. Comm.,* 59 Utah 191, 203 P. 627 (1921).

Upon the basis of what has been said herein, it is our conclusion that the "Open and Public Meetings Act" requires the Commission to conduct the "information obtaining" phase of its activities in proceedings open to the public. However, we cannot see anything in a practical application of the statutes which would prevent the commissioners from discharging the "decision-making," and thus the judicial aspects of their duties, in the traditional judicial manner of private analysis, contemplation, and discussion among the commissioners, so long as the intent and purpose of the Act is preserved in harmony with the principles and pattern stated in this decision. Therefore, insofar as the decision of the trial court requires the Commission to proceed with its "deliberations" in meetings open to the public, it is reversed.

No costs awarded.

HALL and STEWART, JJ., concur.

WILKINS, Justice (concurring):

I concur with the principles announced in the majority opinion and wish to emphasize that, in my judgment, the activities of the Utah Public Service Commission are unambiguously judicial in nature when it deliberates or writes upon proposed public utility rates, and matters pertinent thereto. And because they are judicial, these activities are clearly not subject to Utah's "Open and Public Meetings Act."

MAUGHAN, Justice (dissenting):

On occasions we hear the aphorism, "To call a lamb's tail a leg does not make it one." In my view, the main opinion, and the opinion concurring in the result, fail to give credence to that apodictical pearl. By pronouncing an arm of the legislature (the Public Service Commission), performing a strictly legislative act (regulation and establishment of public utility rates), is somehow then performing in a judicial capacity; demonstrates the mendacious nature of the pearl. In truth, the tail is transformed into a leg, by calling it so.

For the following reasons, I dissent. The clear and unequivocal legislative command as expressed in chapter 4, Title 52, is that the deliberations of an administrative body shall be conducted openly in public. There is no statutory exemption provided for the deliberations of the Public Service Commission in the regulation and establishment of rates for a public utility. The implied exemption engrafted upon the act by the majority opinion, in my view, constitutes judicial legislation.

Section 3 provides:

Every meeting is open to the public unless closed pursuant to sections 52–4–4 *and* 52–4–5. [Emphasis supplied.]

Significantly a conjunction is used in section 3, thus a meeting must be open unless there is compliance with the requirements of both sections 4 and 5. In construing section 4, the majority omits from its references to this section, the most important clause. It provides:

. . . No closed meeting is allowed except as to matters exempted under section 52–4–5; . . .

The parties have stipulated the statutory exemptions of 52–4–5 are not in issue in this action. Thus, the only manner by which the public may be foreclosed from attending the deliberations of the Public Service Commission is by the creation of a judicial exemption, contrary to the expressed legislative intent.

In enacting this chapter, the legislature finds and declares that the state, its agencies and political subdivisions, exist to aid in the conduct of the people's business. *It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly.* [Emphasis supplied.] Sec. 52–4–1.

The rationale for the exemption enacted by the majority opinion is predicated on the concept that the Commission performs *duties* which are quasi-judicial or judicial in nature. There is no reason to believe that the legislature is not equally cognizant of the diverse duties of the Commission, viz., that it exercises both delegated legislative powers and quasi-judicial functions. The argument of the majority is irrelevant for the act applies to a "public body," regardless of the functions it performs. Section 52–4–2(2) provides:

"Public body" means any administrative, advisory, executive or legislative *body* of the state . . . which is vested with the authority to make decisions regarding the public's business. . . . [Emphasis supplied.]

The definition of "public body" is all inclusive except for the exclusion of those who would properly be included in the *judicial department* as that term is used in Article V, Sec. 1, Constitution of Utah. The Public Service Commission is not part of the judicial department; it is an administrative body and falls within the express definition of *public body* in Sec. 2(2). The functions performed by the Commission do not change it from an administrative body and remove it from the act.

The majority opinion expresses the view that when the Commission reaches the "decision making" phase of the proceedings, it should be free to deliberate in private. The reasons expressed for this view are sound, but it is contrary to the expressed legislative intent of section 1 that the "deliberations be conducted openly." Furthermore, this Court usually is not concerned with questions of policy or with the wisdom of legislation.[1] If there be verity to the fears expressed in the majority opinion, it is the exclusive prerogative of the legislature to amend the law.

Although it is the contention of this opinion that the functions performed by an administrative body in a determination of whether it falls within the act are irrelevant, it should be emphasized this Court has ruled in a line of decisions extending over a period of sixty years that the regulation and establishment of public utility rates is strictly a legislative power, and the Commission acts in these matters as an arm of the legislature.[2]

. . . it is of the utmost importance that we keep in mind that the Commission, in fixing and promulgating rates or charges for services rendered by the public utilities of this state acts merely as an arm of the Legislature and that in discharging its duties the Commission cannot, and does not, exercise judicial functions. Its acts are therefore reviewable by this court only in the manner and to the extent stated in the statute. . .[3]

. . . all we can review in cases of this kind is whether there is any evidence to sustain the findings of the commission, whether it has exercised its authority according to law, and whether any constitutional rights of the complaining party have been invaded or disregarded. In view that the commission is merely an arm of the Legislature through whom that body acts in matters of this kind, but a moment's reflection convinces any one that this court may not interfere except for the reasons stated. If interference were extended beyond those limits, it would, in effect, be an interference by this court with the law-making power of this state. . . .

. . . The power conferred upon the Legislature is supreme respecting the regulation and establishing of rates. We may not interfere with or review any legislative act unless some judicial question is presented for review. . . .[4]

. . . This court may not interfere with or review a legislative act unless some judicial question is presented for review. Unless a rate established by the Commission is clearly oppressive or confiscatory, no judicial question is presented. Whether there is any substantial evidence to support a finding of fact made by the Commission is a judicial question and may be determined by this court. Thus all this court can review in this case is whether there is any evidence to sustain the findings of the Commission,

1.  *Bateman v. Board of Examiners,* 7 Utah 2d 221, 234, 322 P.2d 381 (1958).

2.  *Terra Utilities, Inc. v. Public Service Commission,* Utah, 575 P.2d 1029, 1032 (1978); *Jeremy Fuel & Grain Co. v. Public Utilities Comm.,* 63 Utah 392, 397–398, 226 P. 456, 458 (1924); *Salt Lake City v. Utah Light & Traction Company,* 52 Utah 210, 227–228, 173 P. 556, 563 (1918).

3.  *Jeremy Fuel & Grain Co. v. Public Utilities Comm.,* note 2, supra.

4.  *Salt Lake City v. Utah Light & Traction Co.,* note 2, supra.

whether it has exercised its authority according to law, and whether any of plaintiff's constitutional rights have been invaded or disregarded.[5]

The duties exercised by the Commission in rate making are legislative in nature, and the power of review by this Court is limited to a standard similarly applied to legislative enactments.

Although the manner in which the Commission conducts hearings resembles the procedures utilized by courts, it does not mean the Commission is performing a judicial function. The procedures provided by the legislature are merely a means to assure proper standards so there can be no allegation of an improper delegation of legislative power.

As observed in *Lloyd A.Fry Company v. Utah Air Conservation Committee* [6] the law of delegation would be strengthened by emphasizing procedural safeguards. A statutory standard is not a very good protection against arbitrariness. Effective protections are hearings with procedural safeguards, legislative supervision and judicial review.

Finally, I think it well to examine the source of the court's jurisdiction. Section 52–4–9(2) provides:

A person denied any right under this chapter may commence suit in a court of competent jurisdiction to compel compliance with or enjoin violations of this chapter or to determine its applicability to discussions or decisions of a public body. . . .

Plaintiffs herein sought to determine the applicability of this chapter to the discussions or decisions of the Public Service Commission. Section 9(2) specifically grants the district court subject matter jurisdiction to make such determination. The parties stipulated plaintiffs would be denied their request to attend the deliberative sessions of the Commission, wherein the members determine the setting of rates. The stipulation of such a fact is sufficient to establish plaintiffs have been denied a right under this chapter. To require a public

body first to establish a "rule" providing for a closed meeting, prior to the district court acquiring subject matter jurisdiction, would not only violate the specific procedure provided in Sec. 52–4–4 which sets forth the manner in which a public body may close a meeting; but it would also establish a means to subvert the clear legislative intent expressed in Section 1 of the act. A public body could merely fail to establish a formal "rule" and thus avert any potential legal challenge to compel compliance with the act.

5. *Terra Utilities, Inc. v. Public Service Comm.,* note 2, supra.

6. Utah, 545 P.2d 495, 501 (1975).