CITIZENS ACTION COALITION OF INDIANA, INC. and Candice Walker, Plaintiffs-Appellants,

v.

PUBLIC SERVICE COMMISSION OF INDIANA and Larry J. Wallace, William B. Powers and James M. Plaskett, Defendants-Appellees.

No. 3–1180A348.

Court of Appeals of Indiana, Third District.

Aug. 31, 1981.

Rehearing Denied Nov. 3, 1981.

---

Jay Lauer and Wendell Walsh, South Bend, for plaintiffs-appellants.

Linley E. Pearson, Atty. Gen., Robert B. Wente, Deputy Atty. Gen., Indianapolis, for defendants-appellees.

HOFFMAN, Presiding Judge.

Citizens Action Coalition of Indiana, Inc. and Candice Walker (CAC) appeal from a summary judgment in favor of the Public Service Commission of Indiana (PSC). Essentially, the issue raised is whether the provisions of the Indiana Open Door Law, Ind.Code 1971, 5–14–1.5–1 *et seq.* (Supp. 1977) apply to meetings between two PSC commissioners in which they discuss and deliberate upon evidence gathered at hearings on a proposed rate increase.

On December 15, 1977 Indiana Bell Telephone Company, Inc. filed a petition with the PSC seeking approval for increases in rates, tolls and charges for intrastate message toll telephone service furnished by Indiana Bell and all other telephone companies in Indiana. The petition also requested the PSC to approve increases in Indiana Bell's rates and charges for general exchange telephone service, and for authority for Indiana Bell and 39 other intervening telephone companies to implement a directory assistance charging program. At a pre-hearing conference, the PSC granted CAC's petition to intervene. The case was assigned Cause No. 35222.

Indiana Bell presented its case-in-chief on July 10 and 11, 1978. Indiana Bell's witnesses were cross-examined by the public

counselor and intervening parties, including CAC. Testimony and exhibits on behalf of the public counselor and intervenors were presented at a hearing on August 23, 1978. Notice of all hearings was published in accordance with the Public Service Commission Act. Additionally, the PSC mailed written notice of the hearings to other interested parties. These hearings were presided over by Commissioner Powers. Field hearings were also conducted in various cities. With the exception of one hearing which was presided over by Commissioner Powers, these hearings were all presided over by administrative law judges.

After all the hearings were completed CAC filed a motion, pursuant to the Indiana Open Door Law, requesting the PSC to provide public notices of any and all meetings where the PSC would deliberate or take final action in the case. CAC also requested that it receive actual written notice of such meetings and furthermore, that the PSC comply with all requirements of the Open Door Law. This motion was denied on December 13, 1978 at the same time the PSC entered its order in Cause No. 35222.

On January 2, 1979 CAC filed a petition for reconsideration with the PSC in which the Open Door Law was not an issue.[1] The denial of this petition gave rise to an appeal to the Indiana Court of Appeals. The appeal was dismissed however as being untimely filed.

The present action arises from a complaint filed by CAC in the St. Joseph Circuit Court on January 11, 1979. The complaint alleged that the PSC violated the Open Door Law by: 1) failing to conduct its deliberations and discussions of Indiana Bell's rate petition at meetings open to the public; 2) failing to post an agenda and keep memoranda of such meetings; and 3) failing to provide sufficient public notice of such meetings. CAC requested that the PSC's order on Indiana Bell's rate petition be declared null and void and that the PSC

be ordered to comply with the Open Door Law.

The PSC filed a motion to dismiss which was denied by the trial court. After a change of venue, the parties filed cross motions for summary judgment. PSC's motion was granted. The trial court entered detailed findings and conclusions which essentially stated that: 1) exclusive original jurisdiction of the case is vested in the Indiana Court of Appeals pursuant to Ind. Code 1971, 8–1–3–1; 2) the Open Door Law is not applicable to the quasi-judicial proceedings of the PSC; 3) the Public Service Commission Act and the Open Door Law are in conflict and cannot be reconciled; and 4) the Legislature did not intend to repeal the specific provisions of the Public Service Commission Act by the general provisions of the Open Door Law.

CAC initially challenges the conclusion of the trial court that, pursuant to IC 8–1–3–1 and IC 8–1–3–6, the Indiana Court of Appeals has exclusive original jurisdiction in this case. CAC contends that this is not an action to challenge the PSC's order increasing rates, but rather, an independent cause of action pursuant to IC 5–14–1.5–7.

■ IC 8–1–3–1 provides for an appeal by "[a]ny person, firm, association, corporation, city, town or public utility adversely affected by *any final decision, ruling, or order* of the public service commission of Indiana[.]" (Emphasis added.) In such an appeal, "[a]n assignment of errors that the decision, ruling or order of the commission is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the decision, ruling or order, and the sufficiency of the evidence to sustain the finding of facts upon which it was rendered." This "appeal" is not an appeal in fact, but rather a judicial review of the *decision or order* of the PSC by the Court of Appeals. *Sizemore v. Public Service Commission of Ind.* (1960), 240 Ind. 513, 167 N.E.2d 343. The statutory procedure for appeal to the Court of Appeals provides

1. The issues raised concerned the PSC's denial of CAC's motion for production of a transcript, the sufficiency of the evidence, the admissibili-

ty of evidence and the denial of CAC's motion to compel discovery.

"the exclusive remedy for *parties agrieved by the Commission's orders,* and trial courts have no subject-matter jurisdiction over *disputes arising from such orders.*" (Emphasis added.) *Schenkel Enterprises v. Ind. & Mich. Elec. Co.* (1979), Ind.App., 393 N.E.2d 268, at 270-271. *See also, Haste v. Indianapolis Power & Light Co.* (1978), Ind.App., 382 N.E.2d 989. It is clear from the statutes and cases that the Court of Appeals has exclusive original jurisdiction over a challenge to a final decision, ruling or order of the PSC. In accordance with the law, CAC filed an appeal with the Court of Appeals challenging the PSC's order. The present case is a separate action filed pursuant to the Open Door Law.

IC 5–14–1.5–7 provides in part:

"(a) An action may be filed by any citizen of this state in any court of competent jurisdiction to enjoin continuing, threatened of future violations of this chapter, or to declare void any action taken at an executive session in violation of section 3(a) [5–14–1.5–3(a)] of this chapter or at any meeting of which notice is not given in accordance with section 5[5–14–1.5–5] of this chapter. The plaintiff in such suit need not allege or prove special damage different from that suffered by the public at large."

The differences between the statutes are clear. IC 8–1–3–1 allows an appeal only by those adversely affected by an order of the PSC, while the Open Door Law does not require any special damage be alleged or proven. Most importantly for the purpose of this case, IC 8–1–3–1 gives the Court of Appeals exclusive original jurisdiction to review a "final decision, ruling or order" of the PSC. The Open Door Law on the other hand is aimed at proceedings which necessarily occur prior to reaching a final decision. In fact, IC 5–14–1.5–7 provides for a suit for an injunction against any threatened of future violations in addition to any continuing violations. Because the Open Door Law does not provide for a challenge to the merits of a final decision, ruling or order, original jurisdiction lies with the trial court and not with the Court of Appeals.

The PSC asserts that in reality this action is nothing more than a collateral attack on the PSC's order and should therefore be barred. The PSC fails to recognize however that the Public Service Commission Act and the Open Door Law are vastly different in their purposes. The Public Service Commission Act provides generally for the regulation of utilities, while the Open Door Law guarantees the public's right to be fully informed. The fact that the Open Door Law provides a remedy by which actions taken in violation of its provisions may be nullified does not make a suit brought under the Open Door Law a collateral attack on those actions. Rather, it is a method by which a public agency's compliance with the law can be assured.

CAC next challenges the trial court's findings and conclusions that the PSC is not subject to the Open Door Law. The contention is that the PSC is a public agency within the meaning of the statute and therefore meetings of its governing body are required to be open to the public.

The pertinent statutes are as follows: "IC 5–14–1.5–1. Intent of chapter—Construction.—In enacting this chapter [5–14–1.5–1—5–14–1.5–7], the general assembly finds and declares that this state and its political subdivisions exist only to aid in the conduct of the business of the citizens of this state. It is the intent of this chapter that the deliberations and actions of public agencies be conducted and taken openly, unless otherwise expressly provided by statute, in order that the citizens may be fully informed. The purposes of this chapter are hereby declared to be remedial, and its provisions are to be liberally construed with the view of carrying out its policy.
"IC 5–14–1.5–2. Definitions
Sec. 2. For the purposes of this chapter:
(a) 'Public agency' means: (1) any board, commission, department, agency or authority, by whatever name designated, exercising a portion of the executive, administrative, or legislative power of the state; (2) any county, township, school corporation, city, town, political subdivi-

sion, or other entity, by whatever name designated, exercising in a limited geographical area the executive, administrative, or legislative power of the state or a delegated local governmental power; (3) any entity which is subject to either: (i) budget review by either the state board of tax commissioners or the governing body of a county, city, town, township, or school corporation; or (ii) audit by the state board of accounts; (4) any not-for-profit corporation which is created by one (1) or more public agencies, whose governing body is appointed by such public agencies, and which is formed to acquire, construct, maintain or operate any grounds, buildings, structures, or facilities; or (5) any advisory commission, committee, or body created by statute, ordinance, or executive order to advise the governing body of a public agency, except medical staffs or their committees of any such staff.

(b) 'Governing body' means the board, commission, council, or other body of a public agency which takes official action upon public business and includes any committee appointed by the governing body to which authority to take official action upon public business has been delegated.

(c) 'Meeting' means a gathering of a majority of the governing body of a public agency for the purpose of taking official action upon public business. It does not include: (i) any social or chance gathering not intended to avoid the provisions of this chapter; (ii) any on-site inspection of any project or program, (iii) travelling to and attending meetings of organizations devoted to betterment of government or (iv) a caucus.

(d) 'Official action' means: (1) to receive information or to deliberate on public business; (2) to make recommendations pursuant to statute, ordinance, or executive order; (3) to establish policy; (4) to make decisions on public business; or (5) to take final action.

(e) 'Public business' means the function for which the public agency is created.

(f) 'Executive session' means a meeting from which the public is excluded except, the governing body may admit those persons necessary to carry out the purpose of the executive session.

(g) 'Final action' means a vote by the governing body on any motion, proposal, resolution, rule, regulation, ordinance, or order.

(h) 'Caucus' means a gathering of members of a political organization or coalition which is held for purposes of planning political strategy and holding discussions designed to prepare the members for taking official action.

(i) 'Deliberate' means a discussion which may reasonably be expected to result in official action defined under Sec. 2(d)(2), (3), (4) or (5) of this chapter.

(j) 'News media' means all newspapers qualified to receive legal advertisements under IC 5–3–1, all wire services and all licensed commercial or public radio or television stations."

The PSC argues that in performing its duties in ratemaking cases it operates as a quasi-judicial body which is not exercising a portion of the executive, administrative or legislative power of the state. PSC compares its function in such cases with the judicial functions of a trial court which, to be effective, must deliberate behind closed doors. *Appalachian Power Company v. PSC* (1979), W.Va., 253 S.E.2d 377 and *Common Cause of Utah v. Utah Public Service Commission* (1979), Utah, 598 P.2d 1312 are cited as support by the PSC.

*Appalachian Power Company* is not applicable. Although the Supreme Court of Appeals of West Virginia in that case held that adjudicatory sessions of the Public Service Commission were not subject to the West Virginia Open Governmental Proceedings Act, W.Va. Code § 6–9A–1 *et seq.*, it did so on the basis of the statute itself. West Virginia Code § 6–9A–2(4) excepts from the act "... any meeting for the purpose of making an adjudicatory decision in any quasi-judicial, administrative or court of claims proceeding...." The General Assembly has not seen fit to include

such a provision in the Indiana Open Door Law, therefore *Appalachian Power Company* is not persuasive.

In *Common Cause of Utah*, the Utah Supreme Court, in interpreting the Utah Open and Public Meetings Act, Utah Code Annotated, 52–4–1 *et seq.*, declared that the "decision making" or judicial phase of the PSC proceedings may be conducted behind closed doors as long as the "information obtaining" phase is done openly. The Court included within the "information obtaining" phase: the conducting of hearings, taking of evidence, or hearing arguments, discussions or suggestions. The analyzing and contemplative processes make up the "decision making" phase.

The Utah Supreme Court based its decision in large part on what it considered the practicality of the Utah "Sunshine Law." The Court deemed it more practical to exclude the "decision making" phase from the law in order that the commissioners have "the opportunity of discussing and thinking about the matter in private, free from any clamor or pressure, so they can calmly analyze and deliberate upon questions of fact, upon the applicable law, and upon considerations of policy, which bear upon the problems with which they are confronted." 598 P.2d at 1315.

Although statutes should be given a practical interpretation, to declare that the PSC when acting as a quasi-judicial body is excluded from the Indiana Open Door Law would be to ignore the words of the statutes. Unless otherwise expressly provided for by statute, the only meetings from which the public may be excluded are, by definition, "executive sessions." IC 5–14–1.5–2(f). Executive sessions are provided for in IC 5–14–1.5–6 as follows:

"(a) Executive sessions may be held only in the following instances: (i) where authorized by federal or state statute; (ii) for discussion of strategy with respect to: collective bargaining, pending or threatened litigation, the implementation of security systems, or the purchase of property, if for competitive or bargaining reasons such discussion is necessary; (iii) interviews with industrial or commercial prospects or their agents; (iv) interviews with prospective employees; (v) with respect to any individual over whom the governing body has jurisdiction: to receive information concerning the individual's alleged misconduct, or to discuss, prior to any determination, the individual's employment or other status; (vi) for discussion of records classified as confidential by state or federal statute.

(b) A final action must be taken at a meeting open to the public.

(c) Public notice of executive sessions must state their purpose or subject matter. The requirements stated in section 4 of this chapter for memoranda and minutes being made available to the public is modified as to executive sessions in that they need identify only the subject considered.

(d) A governing body may not conduct an executive session during a meeting, except as otherwise permitted by applicable statute."

Quasi-judicial activities are not included within the statute. Practicality, regardless of how desirable it may be, will not permit this Court to frustrate the expressed intent of the Legislature by adding new classifications to IC 5–14–1.5–6. *Common Cause of Utah* is therefore not persuasive.

The issue of whether a quasi-judicial proceeding is within the Florida Sunshine Law was addressed by the Florida Supreme Court in *Canney v. Board of Public Instruction of Alachua County* (1973), Fla., 278 So.2d 260. In determining that an agency exercising quasi-judicial powers remains within the legislative branch of the government, the Florida Supreme Court stated:

"Once the Legislature transforms a portion of a board's responsibilities and duties into that of a judicial character so that the board may exercise quasi-judicial functions, the prerogatives of the Legislature in the matter do not cease. The Administrative Procedure Act (Fla.Stat. § 120.20 et seq. F.S.A.), establishes minimum requirements for the adjudication of any party's legal rights, duties, privi-

leges or immunities by state agencies. If the Legislature may delegate these quasi-judicial powers to the School Board and regulate the procedure to be followed in hearings before the board, it follows as a matter of common logic that the Legislature may further require all meetings of the board at which official acts are to be taken to be public meetings open to the public. A board exercising quasi-judicial functions is not a part of the judicial branch of government." 278 So.2d at 263.

The Court went on to hold:

"The characterization of a decisional-making process by a School Board as 'quasi-judicial' does not make the body into a judicial body. A county school board should not be authorized to avoid the Government in the Sunshine Law by making its own determination that an act is quasi-judicial. Secret meetings would be prevalent. The correct understanding of the terminology 'quasi-judicial' means only that the School Board is acting under certain constitutional strictures which have been enforced upon all administrative boards and not that the School Board has become a part of the judicial branch. To hold otherwise would be to combine the legislative and judicial functions in one body clearly contrary to the separation of powers doctrine. The judiciary should not encroach upon the Legislature's right to require that the activities of the School Board be conducted in the 'sunshine.'" *Id.* at 263–264.

This holding has also been applied to the Public Service Commission acting within its quasi-judicial function. *See, Occidental Chemical Company v. Mayo* (1977), Fla., 351 So.2d 336.

IC 5–14–1.5–2 defines "public agency" as "any board, commission, department, agency or authority, by whatever name designated, exercising a portion of the executive, administrative or legislative power of the state[.]" Defining the PSC's activities as quasi-judicial does not transform its powers into judicial powers. The PSC may exercise only legislative or administrative powers. As stated in *Canney, supra,* 278 So.2d at 262:

"As a general rule administrative agencies have no general judicial powers, notwithstanding they may perform some quasi-judicial duties, and the Legislature may not authorize officers or bodies to exercise powers which are judicial in their nature." (Citations omitted.)

Although the PSC may act as a quasi-judicial body, its powers are legislative and administrative in nature. The PSC is therefore a public agency within the meaning of the Indiana Open Door Law .

The PSC contends that the Public Service Commission Act and the Open Door Law contain conflicting provisions. According to the PSC, the Public Service Commission Act, being the more specific act should control over what it terms the "general" provisions of the Open Door Law.

Initially it must be noted that the Public Service Commission Act and the Open Door Law do not deal primarily with the same subject matter. The Public Service Commission Act provides for the regulation of utilities while the Open Door Law mandates that meetings of public agencies be open to the public. In instances where the two acts deal with the same particular subject, the statutes must be examined carefully and harmonized if possible. Where the statutes cannot be harmonized the courts must strive to ascertain the legislative intent behind the statutes. As a general rule, there is a presumption that the Legislature in enacting a particular piece of legislation has in mind existing statutes covering the same subject. *Schrenker v. Clifford* (1979), Ind., 387 N.E.2d 59. The most recent expression of legislative intent should therefore control. It has also been held however that general statutes or rules do not overrule or supersede specific provisions in statutes unless it is clear that there was an intent to do so. *State ex rel. Dedelow v. Lake County Court* (1978), Ind., 383 N.E.2d 284.

In the present case, the Legislature in passing the Open Door Law specifically expressed its intent as follows:

"It is the intent of this chapter that the deliberations and actions of public agencies be conducted and taken openly, *unless otherwise expressly provided by statute*, in order that the citizens may be fully informed." (Emphasis added.) IC 5–14–1.5–1.

It must be presumed that the Legislature was aware of the provisions of the Public Service Commission Act which had been in existence for many years. The Legislature however did not amend the Public Service Commission Act to exclude it from the Open Door Law.[2] It is therefore apparent that the Legislature intended that the PSC be subject to the Open Door Law.

Finally, the PSC argues that its operations as a quasi-judicial regulating agency will be harmed if it is subjected to the provisions of the Open Door Law. This argument is better addressed to the Legislature. As Justice Maughan stated in his dissent to *Common Cause of Utah, supra,* 598 P.2d 1315:

"The majority opinion expresses the view that when the Commission reaches the 'decision making' phase of the proceedings, it should be free to deliberate in private. The reasons expressed for this view are sound, but it is contrary to the expressed legislative intent of section 1 that the 'deliberations be conducted openly.' Furthermore, this Court usually is not concerned with questions of policy or with the wisdom of legislation. If there be verity to the fears expressed in the majority opinion, it is the exclusive prerogative of the legislature to amend the law." (Footnote omitted.)

For the above reasons the summary judgment is reversed and this case remanded for proceedings consistent with this opinion.

GARRARD and STATON, JJ., concur.

2. An example of a statute expressly excluding a proceeding from the Open Door Law is IC 1971, 31–6–11–15(c) (1979 Burns Supp.) which provides:

"(c) The child protection team may meet at least once a month or at such times as its services are needed by the child protection service. Meetings shall be called by the team coordinator, who shall determine the agenda; however, a majority of the membership of the team may call a meeting upon giving forty-eight-hour notice to all the members. Notwithstanding IC 5–14–1.5 [5–14–1.5–1—5–14–1.5–7], meetings are open only to those persons authorized to receive information under this chapter."